LUCAS COUNTY AUDITOR et al., Appellees,

v.

OHIO BUREAU OF EMPLOYMENT SERVICES et al., Appellants.

[Cite as *Lucas Cty. Auditor v. Ohio Bur. of Emp. Serv.* (1997), 122 Ohio App.3d 237.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–96–398.

Decided Aug. 1, 1997.

**238**

*Julia R. Bates*, Lucas County Prosecuting Attorney, and *Mark E. Lupe*, Assistant Prosecuting Attorney, for appellees.

*Betty D. Montgomery*, Attorney General, and *Mark S. Barnes*, Assistant Attorney General, for appellants.

*Per Curiam.*

This is a consolidated appeal from three judgments of the Lucas County Court of Common Pleas, which found that type "B" day care providers are independent contractors as a matter of law, and are not eligible to receive unemployment compensation benefits.

On appeal, appellant, the Administrator of the Ohio Bureau of Employment Services ("OBES"), sets forth the following two assignments of error:

"Assignment of Error No. 1: The Lucas County Common Pleas Court erred by holding that R.C. 5104.11(A) superseded R.C. 4141.01.

"Assignment of Error No. 2: The Lucas County Common Pleas Court erred by failing to affirm the Unemployment Compensation Board of Review's determinations, which were not unlawful, unreasonable, or against the manifest weight of the evidence."

The undisputed facts that are relevant to the issues raised on appeal are as follows.

Edith Peacock became a "type B" day-care provider for the Lucas County Department of Human Services ("LCDHS"), on October 1, 1993. Peacock was certified as a type B provider pursuant to R.C. 5104.11, and her services were supplied to LCDHS pursuant to a "Purchase of Child Day Care Services Contract," Ohio Department of Human Services ("ODHS") Form 1224,[1] which set

---

1. Form 1224 was promulgated pursuant to R.C. Chapter 5104 and Ohio Adm.Code 5101:2–14.

forth her contract period, rate of pay, billing procedures, and insurance requirements, and further stated:

"INDEPENDENT CONTRACTORS: Providers and employees of the Provider will act in performance of this contract in an independent capacity, and not as officers, employees, or agents of the State of Ohio or the Department. NOTE: Individuals who provide child care services are not employees of the Department, but are considered to be self-employed and, as such, are responsible for payment of any local, state or federal tax obligations on income earned through this agreement as well as for other requirements of self-employment which include, but are not limited to: reporting of income to the Internal Revenue Service; payment of social security taxes; purchasing insurance; establishing a retirement plan and other self-employment benefits, if desired. Individual home Providers may provide child day care in their homes for children who are not receiving publicly funded child day care benefits. However, home Providers must maintain compliance with Section 5104.02 of the Revised Code which limits the total number of children for whom a provider may care."

Peacock operated a type B day-care facility in her home, in which she provided day care for only her five grandchildren, until October 10, 1994, when her daughter no longer needed day-care assistance.

On July 6, 1995, Peacock applied for unemployment compensation benefits. After initially denying Peacock's claim for benefits, OBES vacated its decision and, on August 12, 1995, issued a new determination of benefits, in which it allowed her claim. On August 15, 1995, appellee, the Lucas County Auditor, filed a written request for further reconsideration, in which it asserted that Peacock was an "independent contractor and not an employee of Lucas County Human Services." On September 1, 1995, OBES issued an "Administrator's Reconsideration Decision" in which it affirmed its earlier determination that Peacock was entitled to unemployment benefits. On September 11, 1995, appellee appealed the Administrator's decision to the OBES Board of Review ("board"). Attached to appellee's notice of appeal was a copy of Peacock's services contract.

On October 6, 1995, a review hearing was held before the board, at which Peacock testified that, as a type B day-care provider, she was allowed to care for only her own five grandchildren. She further testified that LCDHS dictates to her what hours she may care for her grandchildren, depending on her daughter's work and school schedules, and that she turns in invoices for payment on a monthly basis. Peacock stated that in order to be certified she had to have a physical examination, and her home was subjected to a fire and safety inspection. She also stated that, in her opinion, she is appellee's employee, because "they pay me a salary and I paid federal and state taxes out that [sic] salary and I file a

federal income statement check—federal income file [*sic*] with my earned income."

On October 11, 1995, the hearing officer issued a decision in which she found, based on the facts that Peacock had to be certified, worked only when appellee told her she could work, and had taxes taken out of her paycheck, that Peacock was LCDHS's employee for purposes of unemployment compensation. Accordingly, the hearing officer affirmed the Administrator's decision granting Peacock unemployment benefits. On December 12, 1995, the board disallowed appellee's request for further reconsideration of the hearing officer's decision, and on December 20, 1996, appellee filed a timely notice of appeal in the Lucas County Court of Common Pleas.

On appeal, the case was submitted to the court on the record of the administrative proceedings, which included a transcript of the October 6, 1995 hearing, and the parties' briefs. On October 21, 1996, the trial court filed a judgment entry in which it found:

"Ms. Peacock signed an agreement knowing that as a Type 'B' day-care provider she was an independent contractor. Furthermore, R.C. 5104.11(A) confers independent contractor status upon Type 'B' day-care providers. Ms. Peacock was Type 'B' day-care provider; therefore, she was an independent contractor. As an independent contractor she is not entitled to unemployment compensation benefits."

Accordingly, the trial court reversed the board's decision, on the basis that it was "unlawful." On November 21, 1996, OBES filed a timely notice of appeal to this court (case No. L–96–374).

Mary Franklin became a type B day-care provider for the Lucas County Children's Services Board ("LCCSB")[2] on January 7, 1991. Franklin was certified as a type B provider pursuant to R.C. 5104.11, and her services were supplied to LCCSB pursuant to a "Child Day Care Authorized Provider Vendor Agreement," ODHS form 1626,[3] which set forth her rate of pay and further stated:

"I am considered self-employed, therefore, I am not an employee of the county agency. As a self-employed person, I am responsible for payment of any local, state, or federal tax obligations on income earned through this agreement as well as for other requirements of self-employment which include, but are not limited

---

**2.** LCCSB is authorized, pursuant to R.C. 5153.01 through 5153.06, to contract on behalf of LCDHS with day-care home providers.

**3.** Form 1624 states that it "is a form which may be used to meet the requirements of rule 5101:2–14–04 of the Administrative Code."

to: reporting of income to Internal Revenue Service; payment of social security taxes; purchasing insurance, if desired; establishing a retirement plan and other self-employment benefits, if desired."

Franklin operated a type B day-care facility in her home until January 24, 1996, when the agency began an investigation of a reported biting incident involving the children in her care, and informed her that her services were not needed until the investigation was completed.

On January 31, 1996, Franklin applied for unemployment compensation benefits. On February 2, 1996, OBES issued a "Notice of Determination of Benefits Rights" in which it allowed Franklin's claim for benefits. On February 6, 1996, appellee filed a written request for reconsideration, in which it asserted that Franklin was not entitled to apply for unemployment compensation because she was under investigation, and because she "is an independent contractor." In support thereof, appellee attached a copy of the vendor agreement executed by Franklin. On April 17, 1996, OBES issued an "Administrator's Reconsideration Decision" in which it found that "[t]he determination dated February 02, 1996, is affirmed," and allowed Franklin's claim for benefits. On April 23, 1996, appellee appealed the Administrator's decision to the board.

On May 28, 1996, a review hearing was held before the board, at which testimony was presented by Franklin and David Bruns, coordinator of appellee's Specialized Services Department.

Franklin testified at the hearing she does not "have a lot of input" into how her job is performed, although she can state what hours she is willing to work and whether she wants to have children in her home. She stated that she is limited to caring for six children at a time, and that LCCSB finds the children to be placed in her care. She stated that LCCSB began deducting taxes from her pay in 1993, and that she is issued a W–2 wage and tax statement for income tax purposes. Franklin further testified that she does not have to submit reports to the agency; however, her home is inspected twice yearly by LCCSB personnel. She also stated that the agency provides car seats for her to transport children to and from day care, and that she is required to feed the children breakfast, lunch, and sometimes dinner, in addition to a snack each day. Finally, Franklin testified that her vendor agreement has never been officially terminated, and that the children were temporarily removed from her care because of the investigation of a biting incident.

Bruns testified at the hearing that the vendor agreement signed by Franklin is "typical" for type B day-care providers. He also testified that LCCSB looks to state regulations to determine whether an individual is properly certified as a type B day-care provider. He stated that the state of Ohio requires fire and safety inspections of type B facilities, and sets forth policies on discipline,

services, and programs to be provided for children in those facilities. Bruns also testified that type B providers must sign a new vendor agreement each year, and that LCCSB certifies such providers on behalf of the state. Finally, Bruns stated that the local office of the Internal Revenue Service requires Lucas County to withhold taxes from the pay of type B day-care providers and to issue them W–2 wage and tax statements instead of 1099 statements for income tax purposes.

On June 19, 1996, the hearing officer filed a decision in which she found, based on the facts that taxes were deducted from Franklin's pay and she was issued a W–2 wage and tax statement, that Franklin was LCCSB's employee for purposes of unemployment compensation, and affirmed the Administrator's decision granting her unemployment benefits. On August 6, 1996, the board disallowed appellee's request for further reconsideration of the hearing officer's decision and, on August 16, 1996, appellee filed a timely notice of appeal in the Lucas County Court of Common Pleas.

On appeal, the case was submitted to the court on the record of the administrative proceedings, which included a transcript of the May 28, 1996 hearing, and the parties' briefs. On November 13, 1996, the trial court filed a judgment entry in which it found, based on the earlier decision involving Peacock, *Lucas Cty. Auditor v. Ohio Bur. of Emp. Serv.* (Oct. 21, 1996), Lucas C.P. No. 95–3587, that Franklin was an independent contractor, and not an employee of LCCSB. Accordingly, the trial court reversed the board's decision. On December 13, 1996, OBES filed a timely notice of appeal to this court (case No. L–96–398).

LaTonda Appleberry became a type B day-care provider for LCDHS on March 20, 1995. Appleberry was certified as a type B provider pursuant to R.C. 5104.11, and her services were supplied to LCDHS pursuant to a "Purchase of Child Day Care Services Contract," ODHS Form 1224. In all relevant respects, Appleberry's contract was identical to that executed by Peacock, including paragraph 8, titled "INDEPENDENT CONTRACTORS." Appleberry operated a type B day-care facility in her home, in which she cared for children that were referred by the agency until October 27, 1995.

On November 22, 1995, Appleberry applied for unemployment compensation benefits. On November 30, 1995, OBES issued a determination of benefits in which it allowed her claim. On December 5, 1995, appellee filed a written request for reconsideration, in which it asserted that Appleberry was "self-employed and considered to be a [*sic*] independent contractor." On January 3, 1996, OBES issued an "Administrator's Reconsideration Decision" in which it affirmed its earlier determination that Appleberry was entitled to unemployment benefits. On January 10, 1996, appellee appealed the Administrator's decision to the board. Attached to the notice of appeal were copies of Appleberry's service contract and 1987 Ohio Atty.Gen.Ops. No. 87–073, in which Ohio's Attorney General concluded

that "[c]ertified type B family day-care home providers and in-home aides with whom a county department of human services contracts for child day-care services are not in the 'employment'" of the department for purposes of unemployment compensation.

On January 29, 1996, a review hearing was held before the board, at which Appleberry testified that LCDHS told her which children she would care for, and how many she could care for at one time. She stated that she was required to fill out attendance reports and accident forms for the children in her care. Appleberry also testified that she was never told that she was self-employed, although she admitted signing the services contract which stated that she was an independent contractor. Appleberry argued in closing that she is LCDHS's employee, because she received a paycheck from which taxes had been deducted.

On February 1, 1996, the hearing officer issued a decision in which she found that Appleberry was an employee, based on her findings that LCDHS assigned children to Appleberry's care, Appleberry had to prepare reports for LCDHS, and LCDHS "made regular payments" to Appleberry for her services, from which it withheld taxes and for which a W–2 wage and tax statement was issued. Accordingly, the hearing officer affirmed the Administrator's decision granting Appleberry unemployment benefits. On March 14, 1996, the board disallowed appellee's request for further reconsideration of the hearing officer's decision and on April 15, 1995, appellee filed a timely notice of appeal in the Lucas County Court of Common Pleas.

On appeal, the case was submitted to the court on the record of the administrative proceedings, which included a transcript of the January 29, 1996 hearing, and the parties' briefs. On February 24, 1997, the trial court filed a judgment entry in which it found that Appleberry was an independent contractor as a matter of law, pursuant to R.C. 5104.11(A), Ohio Adm.Code 5101:2–16–44(K), and 1987 Ohio Atty.Gen.Ops. No. 87–073. Alternatively, the trial court found that Appleberry was an independent contractor because LCDHS "did not control or direct the manner in which [she] performed her job." Accordingly, the trial court reversed the board's decision, on the basis that it was "unlawful and/or against the manifest weight of the evidence." On March 24, 1997, OBES filed a timely notice of appeal to this court (case No. L–97–1100).

On May 30, 1997, this court *sua sponte* ordered that "appeals No. L–97–1100 and L–96–374 be consolidated under appeal No. L–96–398 pursuant to App.R. 3(B)."

OBES asserts in its first assignment of error that the trial court erred by determining that R.C. 5104.11(A), and not 4141.01(B)(1)(b), governs whether type B day-care providers are employees or independent contractors for purposes of

unemployment compensation. In support thereof, OBES argues that only the OBES Administrator may determine whether an individual is "in employment" for purposes of receiving unemployment compensation and, alternatively, even if R.C. 5104.11(A) does define who is an "employee" for purposes of the certification of type B day-care workers, the term "employee" as used in that section does not have the same meaning when analyzed in the context of unemployment compensation law.

This appeal is governed by R.C. 4141.28(O)(1), which states:

"Any interested party * * *, within thirty days after notice of the decision of the board * * * may appeal from the decision of the board to the court of common pleas * * *. If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision or it may modify such decision and enter final judgment in accordance with such modification; otherwise such court shall affirm such decision. Any interested party shall have the right to appeal from the decision of the court as in civil cases."

The Supreme Court of Ohio recently held that R.C. 4141.28(O)(1) "does not create distinctions between the scope of review of common pleas court and appellate courts. To apply the same standard at each appellate level does not result in a *de novo* review standard." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 696–697, 653 N.E.2d 1207, 1210.

■ Accordingly, the board's role as a fact finder remains intact, and "a reviewing court may reverse the board's determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence." *Id.* at 697, 653 N.E.2d at 1210, citing *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 19 OBR 12, 482 N.E.2d 587.

It is undisputed in this case that Peacock, Franklin and Appleberry signed provider agreements, pursuant to ODHS forms 1224 and 1626, that specifically stated that they were independent contractors, and not employees. Further, all three were certified as type B day-care providers pursuant to R.C. 5104.11, which provides that such facilities shall be subjected to periodic inspections before receiving a certificate. That statute further states:

"(A) * * * An authorized provider of a type B family day-care home that receives a certificate pursuant to this section to provide publicly funded child day-care is an independent contractor and is not an employee of the county department of human services that issues the certificate."

Similarly, Ohio Adm.Code 5101:2–16–44, which governs contract requirements for the purchase of publicly funded child day-care services, states:

"(K) All certified type B family day care home providers (including limited certified providers) and certified in-home aides (including limited certified in-home aides) shall not be considered employees of the CDHS [County Department of Human Services] but shall be considered independent employees responsible for requirements of self-employment including: payment of any local, state or federal tax obligations on earned income; reporting of earned income to the internal revenue service; payment of social security taxes and maintenance of any liability insurance that the provider deems necessary."

In addition, Ohio Adm.Code 5101:2–14–04, which governs the issuance and renewal of a certificate, states:

"(I) An individual certified by the CDHS as a type B family day care home provider to provide publicly funded child care services is an independent contractor and is not an employee of the CDHS that issued the certificate."

R.C. 4141.01(A) provides that the term "employer" includes "the state, its instrumentalities, its political subdivisions and their instrumentalities," if they have at least one individual "in employment" for a statutorily specified period of time. R.C. 4141.01(B)(1)(b) defines the term "employment" as:

"Services performed by an individual for remuneration unless it is shown to the satisfaction of the administrator that such individual:

"(i) Has been and will continue to be free from control or direction over the performance of such service, both under a contract of service and in fact;

"(ii) That such service is outside the usual course of the business for which service is performed; and

"(iii) that such individual is customarily engaged in an independently established trade, occupation, profession, or business."

Ohio Adm.Code 4141–3–05 further states that "employment" includes services performed for an individual if that individual "has the right to direct or control the performance of such services" and remuneration is received in return for those services. Ohio Adm.Code 4141–3–05 lists twenty factors which ordinarily may be considered by the Administrator in determining whether the person paying for such services has exercised "direction or control" over their performance.

In 1987, Ohio Atty.Gen.Ops. No. 87–073, Ohio's Attorney General extensively analyzed the employment status of certified type B family day-care home providers as then defined in R.C. 5104.01(F), (P) and (U), and concluded that such individuals were independent contractors for purposes of participation in the Public Employees Retirement System, workers' compensation, unemployment compensation and state income tax withholding.

In making his determination, the Attorney General reviewed the nature of services provided by type B day-care home providers in the context of their provider agreements and the applicable statutes, including R.C. 4141.01(B)(1)(b). Similar to the provider agreements in this case, the agreements analyzed by the Attorney General provided for certification and reimbursement of day-care home providers, approval of the provider's hours by the county, and approval of potential day-care clients. The agreements also fixed the hourly or daily rate of pay and required the provider to submit invoices for payment. In addition, the agreements provided:

"I understand that in addition to the children covered by this agreement, I may provide child day care in my home for children who are not covered by this agreement. I am considered self-employed; therefore, I am not an employee of the county agency. As a self-employed person, I am responsible for payment of any local, state, or federal tax obligations on income earned through this agreement as well as for other requirements of self-employment which include, but are not limited to: reporting of income to Internal Revenue Service; payment of social security taxes; purchasing insurance, if desired; establishing a retirement plan and other self-employment benefits, if desired."

In 1991, the Ohio legislature amended R.C. 5104.11(A) to include the above-quoted language that plainly states that all certified type B day-care home providers are independent contractors and not employees of the certifying entity with which they contract to provide services. The state-issued forms that are used as provider agreements for type B day-care home providers contain the same language.

As to whether the Administrator's authority to determine if type B day-care home providers such as Peacock, Franklin and Appleberry are in "employment" pursuant to R.C. 4141.01(B)(1)(b) has been superseded by R.C. 5104.11, it is well settled that specific statutory provisions will be found to prevail over conflicting general statutes. *Springdale v. CSX Ry. Corp.* (1994), 68 Ohio St.3d 371, 376, 627 N.E.2d 534, 537–538. In addition, it is a basic tenet of statutory construction that "the General Assembly is not presumed to do a vain or useless thing, and that when language is inserted in a statute it is inserted to accomplish some definite purpose." *State ex rel. Cleveland Elec. Illum. Co. v. Euclid* (1959), 169 Ohio St. 476, 479, 8 O.O.2d 480, 482, 159 N.E.2d 756, 759.

As to the meaning of the term "independent contractor" as used in R.C. 5104.11(A), pursuant to R.C. 1.42, words used in a statute must be read in context and construed according to their plain meaning. *State v. Krutz* (1986), 28 Ohio St.3d 36, 38, 28 OBR 96, 97–98, 502 N.E.2d 210, 211–212. "It is axiomatic that an unambiguous statute means what it says." *Hakim v. Kosydar* (1977), 49 Ohio St.2d 161, 164, 3 O.O.3d 211, 213, 359 N.E.2d 1371, 1373. Likewise, words in a

contract should be given their plain and ordinary meaning unless "manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 245–246, 7 O.O.3d 403, 406, 374 N.E.2d 146, 150.

■ Upon consideration of the foregoing, this court finds that R.C. 5104.11(A) supersedes R.C. 4141.01 and, as a matter of law, type B day-care home providers certified pursuant to R.C. 5104.11(A) are independent contractors and not employees of appellee for purposes of unemployment compensation. Accordingly, OBES's first assignment of error is not well taken.

OBES asserts in its second assignment of error that the Administrator correctly determined, based on R.C. 4141.01(B)(1)(b), that Peacock, Franklin and Appleberry were appellee's employees. In support thereof, OBES argues that appellee controlled "the matter of the claimants' employment" by requiring them to "modify their homes to conform to fire codes," obtain physical examinations, submit to semiannual home inspections, complete a training course, feed the children meals and have car seats for transporting them to and from day care. In addition, OBES argues that none of the women provided day-care services for anyone other than appellee, and appellee deducted federal and state taxes from the checks the women received for performing services.

This court notes at the outset that virtually all of the factors listed by OBES as supporting the board's determination that Peacock, Franklin and Appleberry were appellee's employees are requirements imposed by the legislature on those who would be certified as type B day-care home providers. See Ohio Adm.Code 5101:2–14–04(B)(1).[4] In addition, the withholding of taxes is not required by the provider agreements or R.C. 5104.11 and any administrative regulations promulgated thereunder, nor is it listed under Ohio Adm.Code 4141-3–05 as one of the twenty factors to be considered by the Administrator in determining whether an individual is in "employment" for purposes of unemployment compensation.

Upon consideration of the foregoing, and our determination as to OBES's first assignment of error, this court finds that R.C. 4141.01(B)(1)(b) has no application

---

**4.** Ohio Adm.Code 5101:2–14–04(B)(1) lists the following relevant requirements for certification or recertification as a type B day-care home provider: satisfactory home inspection (5101:2–14–03), a fire safety inspection (5101:2–14–07), indoor/outdoor space requirements (5101:2–14–08), provider's satisfactory physical, mental and emotional qualifications (5101:2–14–10), continuing education requirements (5101:2–14–13), group size (5101:2–14–16), activities and equipment (5101:2–14–17), sleeping provisions (5101:2–14–18), clean and safe equipment and practices (5101:2–14–19), safety and supervision of children (5101:2–14–20), transportation and field trip safety, including the use of car seats (5101:2–14–21), discipline (5101:2–14–22), parent/provider responsibility (5101:2–14–24), record keeping (5101:2–14–26), medical and dental emergency plan (5101:2–14–28), first aid supplies (5101:2–14–29), and meal preparation and nutrition requirements (5101:2–14–32).

in this case, and the trial court did not err by finding that the board's decision was "unlawful, unreasonable or against the manifest weight of the evidence." Accordingly, OBES's second assignment of error is not well taken.

On consideration whereof, this court finds further that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant, OBES.

*Judgment affirmed.*

GLASSER, SHERCK and KNEPPER, JJ., concur.