**BRAGG, Appellant,**

**v.**

**HATFIELD et al., Appellees.**

[Cite as *Bragg v. Hatfield,* 152 Ohio App.3d 174, 2003-Ohio-1441.]

Court of Appeals of Ohio,
Fourth District, Vinton County.

No. 02CA567.

Decided March 19, 2003.

176

J. Jeffrey Benson, for appellant.

John K. Clark, Jr. for appellees.

Per Curiam.

{¶ 1}    This is an appeal from a Vinton County Common Pleas Court, Juvenile Division judgment that denied the custody complaint filed by Mark E. Bragg II, plaintiff below and appellant herein.   The following errors are assigned for our review:

"FIRST ASSIGNMENT OF ERROR:

"The Vinton County Probate Court did not have subject matter jurisdiction to issue a custody order to a non-parent in an adoption proceeding that was not granted and it was error for the Vinton County Juvenile Court to adopt/enforce that order.

"SECOND ASSIGNMENT OF ERROR:

"Even if the Vinton County Probate Court order was valid/enforceable, the Vinton County Juvenile Court erred by holding it could not be modified by appellant, the biological father, absent proof of a 'change of circumstances' as mandated by R.C. 3109.04(E)(1).

"THIRD ASSIGNMENT OF ERROR:

"Even if the Vinton County Probate Court order was valid/enforceable and the R.C. 3109.04(E)(1) 'change of circumstances' is the correct standard of review, the Vinton County Juvenile Court abused its discretion by holding that the appellant failed to meet that standard."

{¶ 2} Appellant and Elizabeth Hatfield (f.k.a. Elizabeth Luster) are the natural parents of Matthew Gene Hatfield (d.o.b. 11–24–92).[1] On July 9, 1994, Hatfield married Randy Luster. Several years later, the couple separated and the minor child began to live with his step-grandparents, Bert and Lavada Luster, defendants below and appellees herein. In October 1997, Elizabeth and Randy Luster divorced, but Matthew apparently continued to live with appellees.

{¶ 3} In 1998, appellees filed a petition in the Vinton County Probate Court to adopt Matthew. Appellant opposed the adoption and, on May 29, 1998, the parties agreed to dismiss the petition but allocate parental rights and responsibilities for the minor child to appellees subject to regular visitation between Matthew and his father.

{¶ 4} Appellant commenced the action below on October 5, 2001, by filing a complaint for custody of his son.[2] During the course of the proceedings, appellant asserted that the 1998 agreement is void ab initio because the probate court had no jurisdiction to make a child-custody award. Each side filed written memoranda and, on April 11, 2002, the trial court found that the probate court possessed the authority to award custody pursuant to R.C. 3107.14(D). Further, the court reasoned that the matter should proceed as on a motion for modification of custody pursuant to R.C. 3109.04(E)(1)(a) and that appellant must demonstrate a change in circumstances.

{¶ 5} At the April 18, 2002 hearing, each side presented evidence concerning their respective abilities to care for Matthew. Evidence was also adduced to show Matthew's disciplinary problems at school as well as some physical and other limitations incumbent with appellees as the minor child's caregivers.

---

1. Matthew's parents apparently did not marry.

2. Elizabeth Hatfield was named a defendant in that complaint but filed no answer and has not entered an appearance in these proceedings.

{¶ 6} On June 4, 2002, the trial court issued its judgment and concluded that appellant had not shown a sufficient change in circumstances. Thus, the trial court denied his request for custody and this appeal followed.

I

{¶ 7} Appellant argues in his first assignment of error that the trial court erred in holding that the 1998 Vinton County Probate Court agreed entry and order is valid and enforceable.[3] In particular, he contends that the probate court did not have subject matter jurisdiction to award custody of his son to the appellees. We disagree.

{¶ 8} R.C. 3107.14(D) states:

"If the requirements for a decree under division (C) of this section have not been satisfied or the court vacates an interlocutory order of adoption, or if the court finds that a person sought to be adopted was placed in the home of the petitioner in· violation of law, the court shall dismiss the petition and *may determine the agency or person to have temporary or permanent custody of the person,* which may include the agency or person that had custody prior to the filing of the petition or the petitioner, if the court finds it is in the best interest of the person as supported by the evidence, or if the person is a minor, the court may certify the case to the juvenile court of the county where the minor is then residing for appropriate action and disposition." (Emphasis added.)

{¶ 9} It is axiomatic that statutes mean what they say. *State v. McPherson* (2001), 142 Ohio App.3d 274, 280, 755 N.E.2d 426; *Lucas Cty. Aud. v. Ohio Bur. of Emp. Serv.* (1997), 122 Ohio App.3d 237, 246, 701 N.E.2d 703; *Woods v. Farmers Ins. of Columbus, Inc.* (1995), 106 Ohio App.3d 389, 394, 666 N.E.2d 283. R.C. 3107.14(D) expressly states that if the probate court dismisses an adoption petition, the court may determine which person or agency is to have temporary or permanent custody of the adoptee.

{¶ 10} While we have found little discussion of this statute in any legal authorities, we note that case law supports this interpretation. See, e.g., *In re Adoption of Howell* (1991), 77 Ohio App.3d 80, 89–90, 601 N.E.2d 92 ("*Adoption is not a proceeding to determine custody.* It is only if an adoption petition is

---

3. Although appellant agreed to the terms of the 1998 probate court judgment, he correctly points out in his brief that subject matter jurisdiction cannot be conferred upon a court by agreement of the parties. See *Logan v. Vice* (1992), 79 Ohio App.3d 838, 842, 608 N.E.2d 786; *State ex rel. Lawrence Dev. Co. v. Weir* (1983), 11 Ohio App.3d 96, 97, 11 OBR 148, 463 N.E.2d 398. Thus, the pivotal issue here is whether the probate court had the jurisdiction to decide Matthew's custody.

dismissed that the probate court may determine the agency or person to have custody of the person to be adopted."); *In re Adoption of Mays* (1986), 30 Ohio App.3d 195, 197, 30 OBR 338, 507 N.E.2d 453 ("We further find statutory authority for the probate court's award of permanent custody to [the petitioner] following its dismissal of the petition for adoption.").

{¶ 11} Also, learned treatises have touched on this provision. See, e.g., 2 Merrick–Rippner, Probate Law (2001) 745, Section 98.50 ("If the court dismisses the petition, it may determine the agency or person to have temporary or permanent custody of the adoptee."); 47 Ohio Jurisprudence 3d (1994) 190, Family Law, Section 935 (Upon dismissal of an adoption petition, "[t]he court may determine the agency or person to have temporary or permanent custody of the person" sought to be adopted.). Although we acknowledge that this particular statute is used very infrequently and may not be the preferred method to determine the custody of a minor child, we conclude that the probate court did possess jurisdiction to award custody of Matthew to appellees.

{¶ 12} Appellant asserts that R.C. 2151.23(A)(1) grants juvenile courts the "exclusive original jurisdiction" to determine custody of children. That provision, however, simply prohibits action by any other court that is not explicitly given jurisdiction to act. See *Hartshorne v. Hartshorne* (Ohio App.1958), 185 N.E.2d 329, 330. In the case at bar, R.C. 3107.14(D) explicitly grants to probate courts the authority to act on the issue of child custody after an adoption petition is dismissed. We will not construe the express terms of that statute in derogation of the authority extended by the Ohio General Assembly. Thus, we agree with the trial court's conclusion that the probate court possessed the authority, pursuant to R.C. 3107.14(D), to approve the 1998 agreed entry that allocated parental rights and responsibilities for the minor child to appellees.

{¶ 13} For these reasons, we find that the trial court did not err by following the agreed custody entry and order. Thus, appellant's first assignment of error is without merit and is hereby overruled.

## II

{¶ 14} Appellant argues in his second assignment of error that even if the 1998 agreement is valid and enforceable, the trial court nonetheless erred by employing an incorrect standard to determine this complaint for custody. Specifically, appellant contends that the trial court should have reviewed the custody motion under a parental-suitability standard rather than under a change-in-circumstances standard. We disagree.

{¶ 15} Although neither side to this controversy cites a decision by any Ohio court that is precisely on point with these facts, we believe that the trial court

applied the correct standard in reviewing and determining the merits of appellant's complaint.

{¶ 16}   We acknowledge that parents have a fundamental right to the custody and care of their children.  *Troxel v. Granville* (2000), 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49; *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599.  The right to raise one's child is an essential and basic civil right in this country.  *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680; *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169.  Thus, in a child-custody proceeding between a parent and a nonparent, the Ohio Supreme Court held that custody cannot be awarded to a nonparent without first making a parental-unsuitability finding.  *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047, at the syllabus;  see, also, *In re Bonfield*, 96 Ohio St.3d 218, 2002-Ohio-4182, 773 N.E.2d 507, at ¶ 43.

{¶ 17}   However, the *Perales* case applies only in the context of an original custody award between a parent and a nonparent.  *Masitto v. Masitto* (1986), 22 Ohio St.3d 63, 68, 22 OBR 81, 488 N.E.2d 857.  We note that in the instant case, the trial court proceedings did not involve an original custody award.  In 1998, the trial court had allocated parental rights and responsibilities.  Once an original custody award has been made, the general rule is that the award will not be modified unless, pursuant to R.C. 3109.04, a change of circumstances is demonstrated.  Id. In other words, if an original custody award has already been made, the party seeking to modify that award must show a change in circumstances even if the noncustodial party is a parent and the custodial party is a nonparent.  See, e.g., *Wilburn v. Wilburn* (2001), 144 Ohio App.3d 279, 283–284, 760 N.E.2d 7; *In re Whiting* (1990), 70 Ohio App.3d 183, 187, 590 N.E.2d 859; *Kenney v. Kenney* (Nov. 26, 2001), Warren App. No. CA2001–04–036, 2001 WL 1485878.

{¶ 18}   In the case sub judice, appellant sought to modify the 1998 custody award.  Although appellant's suitability as a parent was certainly a primary issue for the first proceeding, it was not an issue in the instant proceeding.  Rather, the trial court correctly observed that the proper standard at this stage is the standard set out in R.C. 3109.04(E).

{¶ 19}   Our conclusion that parental suitability is not the appropriate standard to apply in this matter is supported by the idea that a parent who contracts away custody rights for his minor child may be considered to have forfeited his paramount right to custody.  *In re Perales*, supra, 52 Ohio St.2d at 97, 6 O.O.3d 293, 369 N.E.2d 1047; *Masitto*, supra, 22 Ohio St.3d at 65, 22 OBR 81, 488 N.E.2d 857.  In the case sub judice, appellant joined in the 1998 agreed entry and gave appellees custody of Matthew.  This act, in essence, contracted

away his paramount right to custody. Although appellant did not forfeit or lose all of his parental rights, Matthew's placement in appellees' custody prevents appellant from asserting now his paramount rights as a natural parent. As we noted above, a custody-modification request must now satisfy the R.C. 3109.04(E) requirements.

{¶ 20} For these reasons, we hereby overrule appellant's second assignment of error.

### III

{¶ 21} In his third assignment of error, appellant asserts that the trial court erred by finding that appellant had not proven a sufficient change in circumstances to warrant a custody modification. We disagree.

{¶ 22} Our analysis begins with R.C. 3109.04(E)(1)(a), which states:

"The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

"* * *

"(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

{¶ 23} In determining whether to modify custody, three factors generally guide a trial court's decision: (1) whether a change in circumstances has occurred since the previous decree, (2) whether a modification is in the child's best interests, and (3) whether the benefits resulting from the modification outweigh any harm. *Beaver v. Beaver* (2001), 143 Ohio App.3d 1, 9, 757 N.E.2d 41; *Clark v. Smith* (1998), 130 Ohio App.3d 648, 653, 720 N.E.2d 973; *Stover v. Plumley* (1996), 113 Ohio App.3d 839, 842, 682 N.E.2d 683. The threshold requirement here is whether a change in circumstances has occurred. *Makni v. Makni*, Pike App. No. 01CA680, 2002-Ohio-5098, 2002 WL 31131877, at ¶ 27. The change must be significant—something more than a slight or inconsequential change. Id.; see, also, *Putnam v. Putnam* (May 17, 2001), Washington App. No. 00CA32, 2001 WL 548717; *Smith v. Smith* (July 26, 2000), Athens App. No. 00CA07, 2000 WL 1047665. The change must be significant.

{¶ 24} A trial court's finding regarding a change in circumstances should not be disturbed on appeal absent an abuse of discretion. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 416, 674 N.E.2d 1159. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. See *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 342, 695 N.E.2d 1140; *Malone v. Courtyard by Marriott, L.P.* (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242; *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees* (1995), 72 Ohio St.3d 62, 64, 647 N.E.2d 486. In applying the abuse-of-discretion standard, appellate courts are admonished that they are not to substitute their judgment for that of the trial court. See *State ex rel. Duncan v. Chippewa Twp. Trustees* (1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254; *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181; *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301. Indeed, to demonstrate an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1.

{¶ 25} Appellant argues that the evidence adduced at the hearing reveals that Matthew has disciplinary problems in school. Appellant also points out that appellees (1) are not biologically related to Matthew, (2) are ill-prepared to assist him with his academic work,[4] (3) are in their upper 50s and are in poor health, and (4) have not followed through with Matthew's counseling. We are not persuaded.

{¶ 26} Although the evidence indicates that Matthew has problems at school, Sandra Allman, his elementary school principal, testified that Matthew has exhibited such problems since entering kindergarten in the 1998–1999 school year. Allman further stated that Matthew's behavior has actually improved during the last year.[5] Allman testified that appellees have shown concern over these problems and have cooperated with the school. The evidence also indicates that the appellees have taken Matthew to counseling. In short, we agree with the trial court's conclusion that no significant change in these circumstances has occurred since 1998. Furthermore, to the extent that any change has occurred,

---

4. During the hearing below, both appellees demonstrated difficulty in their reading abilities.

5. These problems include altercations with fellow students, making inappropriate sexual innuendos, and making statements to the effect that he would kill himself and a parent/volunteer at the school.

appellees appear to be reacting to the changes in an appropriate and positive way.

{¶ 27} There also appears to be no appreciable change in appellees' own circumstances. Their limited educational background is the same now as it was four years ago. In any event, we are not convinced that academic skill is an absolute prerequisite or requirement to effectively parent a child. Appellees also testified that no significant change has occurred in their health over the past four years. This testimony was corroborated by their children, Sandra Byer and Randy Luster.

{¶ 28} We, however, acknowledge and fully agree with appellant that a very positive change has occurred in his own circumstances. Since he agreed in 1998 that appellees could have custody of his son, appellant has procured and maintained a stable home, has held a steady job, and has made progress toward earning an associate's degree in electronics at "DeVry." Appellant has also forged a stronger father-son relationship with the minor child. Appellant admitted that he did not have much of a relationship with his son prior to 1998. Since that time, however, appellant has consistently exercised his visitation rights and has participated more in Matthew's life.

{¶ 29} The trial court concluded that a substantial change in circumstance has not occurred in the last four years and that a modification of custody is not warranted. Although strong arguments support an opposite conclusion, in light of the thoughtful and detailed consideration of the evidence reflected in the trial court's decision, we cannot conclude that the court's decision was arbitrary, unreasonable, or unconscionable. Thus, we find that the trial court did not abuse its discretion in deciding this matter, and we hereby overrule appellant's third assignment of error.

{¶ 30} Recently, the Ohio Supreme Court in *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, held that in a child-custody case arising from a parentage action, a trial court must make a parental-unsuitability determination on the record before awarding legal custody to a nonparent. Id. at the syllabus. The factual posture of *Hockstok* involved a natural mother who signed two separate agreements giving her parents custody of her son for six-month periods while she attempted to create a more stable living environment for the child. In each instance, the mother failed to comply with the terms of the temporary custody agreements. In the end, the maternal grandparents filed a motion for custody of their grandson and were eventually awarded custody without the magistrate's or trial court's ever making a parental-unsuitability determination. That judgment was not appealed. Ten months later, the mother filed a motion to modify custody. The trial court reviewed her motion under an

R.C. 3109.04(E) standard and ultimately denied the mother's request. She appealed to the Licking County Court of Appeals, which reversed the judgment and remanded it to the trial court for a parental-suitability determination. The Ohio Supreme Court affirmed the court of appeals and held that the trial court should have considered the mother's suitability as a parent when it first granted the grandparents' motion for custody.

{¶ 31} We believe that *Hockstok* is distinguishable from the case sub judice on two very salient grounds. First, the Ohio Supreme Court's analysis in that case was directed at the original custody award to the grandparents. In the instant case, appellant challenges the subsequent order denying his motion to modify custody. He does not argue that the Vinton County Probate Court erred by failing to determine whether he was a suitable parent. The second, and perhaps more important, distinction is that in the case at bar appellant entered into an agreed judgment in the Vinton County Probate Court to grant appellees custody. Although the mother in *Hockstok* entered into two agreements to surrender custody to her parents, those agreements were only temporary and expired after six months. The subsequent award of legal custody to the child's maternal grandparents was not based on any type of agreement, as was noted by the Supreme Court in its decision. Id. at ¶ 33. In effect, this was an original custody award and, pursuant to case law discussed previously, the trial court was required to make a finding of parental unsuitability before awarding custody to a nonparent. By contrast, in this case appellant agreed that appellees could have parental rights and responsibilities over Matthew. Thus, a clear contractual relinquishment of parental rights exists in this case that was not present in *Hockstok*. We thus conclude that *Hockstok* is distinguishable from the case sub judice and does not control our disposition herein.

{¶ 32} We take this opportunity to commend appellant for the positive strides he has made, both in his life and in his son's life. We also emphasize that neither our decision nor the trial court's decision should be construed as a permanent bar to appellant's gaining custody of Matthew. There may very well be additional changes in circumstances as Matthew grows older. In the meantime, we encourage appellant to continue to forge a strong relationship with his son by exercising his visitation rights and participating in his son's life.

{¶ 33} Having reviewed all of the errors assigned and argued in the briefs, and after having found merit in none of them, we hereby affirm the trial court's judgment.

Judgment affirmed.

EVANS, P.J., PETER B. ABELE and KLINE, JJ., concur.