DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from an Athens County Common Pleas Court, Juvenile Division, judgment that denied a motion by Halesh Patel, defendant below and appellant herein, to reduce the child support obligation he owes for his daughter, Trisha Patel (d/o/b 5-29-92).
 {¶ 2} Appellant assigns the following errors for review and determination:
FIRST ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ALLOWING THE USE OF APPELLANT'S 2004 GROSS INCOME FIGURES, IN THE CHILD SUPPORT WORKSHEET, WITHOUT ADJUSTING THEM FOR ONE-TIME OUT OF PERIOD INCOME OR OTHERWISE ADJUSTING THEM TO COMPLY WITH THE PROVISIONS OF R.C. 3119.01, ET SEQ., TO DENY APPELLANT'S MOTION FOR MODIFICATION OF HIS CHILD SUPPORT ORDER."
SECOND ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ACCEPTING CHILD SUPPORT WORKSHEET CALCULATIONS WHICH DO NOT REFLECT THE ACTUAL AMOUNT OF APPELLANT'S SPOUSAL SUPPORT PAID IN 2004, IN VIOLATION OF R.C. 3119.05(B), TO DENY APPELLANT'S MOTION FOR MODIFICATION OF HIS CHILD SUPPORT ORDER."
THIRD ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ACCEPTING CHILD SUPPORT WORKSHEET CALCULATIONS WHICH DO NOT ACCURATELY REFLECT THE APPELLANT'S 2004 PAYMENTS OF CHILD HEALTH ON LINE 20 OF THE CHILD SUPPORT WORKSHEET, IN VIOLATION OF R.C. 3119.79(B) AND 3119.02, ET SEQ., TO DENY APPELLANT'S MOTION FOR MODIFICATION OF HIS CHILD SUPPORT ORDER."
 {¶ 3} In 1993 the trial court adjudicated appellant as the natural father of Trisha Tripito (n/k/a Trisha Patel) and ordered him to pay $1,000 per month for her support.[1] The court modified that obligation several times over the years as appellant's income fluctuated.
 {¶ 4} On July 9, 2005 appellant requested the trial court to reduce his support obligation from $1,500 per month to $437.06 per month. Appellant cited a "substantial decrease" in his income as the reason for the reduction. At the hearing appellant recounted the many difficulties he has experienced practicing medicine the last few years and how those difficulties led him to fall behind on his support for Trisha, as well as his support obligations from a prior marriage.[2] Appellant testified that he had opened a new medical practice, but that it would take some time to begin collecting payments from insurance companies. In the meantime, his income was such that a child support reduction was necessary and warranted.
 {¶ 5} The magistrate's decision recommended that the motion to modify be denied. Based on an Athens County Child Support Enforcement Agency (ACCSEA) child support worksheet, the magistrate found less than a ten percent difference between appellant's new obligation and his old one. Thus, appellant failed to demonstrate a sufficient change in his circumstances to warrant a support reduction.
 {¶ 6} Appellant objected to the report and challenged various ACCSEA figures used in its computations. The trial court overruled his objections, adopted the magistrate's recommendations and denied appellant's motion to modify his support obligation. This appeal followed.
 I {¶ 7} Appellate courts generally review trial court decisions on child support matters, including child support modification, under the abuse of discretion standard. Booth v. Booth (1989),44 Ohio St.3d 142, 144, 541 N.E.2d 1028; also see Mahlerwein v.Mahlerwein, 160 Ohio App.3d 564, 828 N.E.2d 153, 2005-Ohio-1835, at ¶ 19; Bettinger v. Bettinger, Summit App. No. 22621,2005-Ohio-5839, at ¶ 7. We note that an abuse of discretion is more than an error of law or judgment; it implies the court's attitude was unreasonable, arbitrary or unconscionable. Landisv. Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339, 342,695 N.E.2d 1140; Malone v. Courtyard by Marriott L.P. (1996),74 Ohio St.3d 440, 448, 659 N.E.2d 1242. When applying this standard, appellate courts must not substitute their judgment for that of the trial court. State ex rel. Duncan v. Chippewa Twp.Trustees (1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254; In reJane Doe 1 (1991). 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181, citing Berk v. Matthews (1990), 53 Ohio St.3d 161, 169,559 N.E.2d 1301.
 {¶ 8} An existing child support order may be modified if, after recalculating the amount of child support required to be paid under the statutory worksheet, the new amount is more than ten percent greater, or more than ten percent less, than the existing child support order. R.C. 3119.79(A); also see Lee v.Loos, Tuscarawas App. No. 2004 AP 0215, 2005-Ohio-254, at ¶¶10-11; Fox v. Fox, Hancock App. No. 5-03-42, 2004-Ohio-3344, at ¶ 13; Swank v. Swank, Summit App. No. 21207, 2003-Ohio-720, at ¶ 12. Trial courts must calculate child support using the R.C.3119.022 statutory child support worksheet. DePalmo v. DePalmo
(1997), 78 Ohio St.3d 535, 679 N.E.2d 266, at paragraph one of the syllabus; Marker v. Grimm (1992), 65 Ohio St.3d 139,601 N.E.2d 496, at paragraph one of the syllabus. The amount arrived at using the worksheet is rebuttably presumed to be the correct support amount. Hurte v. Hurte, Washington App. No. 04CA33,2005-Ohio-5967, at ¶ 25; Copas v. Copas, Adams App. No. 02CA754, 2003-Ohio-3473, at ¶ 8. Courts may deviate from that worksheet, however, when the result would be unreasonable or unjust. Copas, supra at ¶ 8.
 {¶ 9} In the case sub judice, the magistrate and the trial court made their decisions based on a child support worksheet submitted by ACCSEA. Appellant does not argue that the magistrate or the court should have deviated from the worksheet. Rather, appellant asserts that the figures used by ACCSEA in its computations are incorrect and should not have been used on the worksheet. We now turn our attention to appellant's individual assignments of error.
 II {¶ 10} In his first assignment of error appellant argues that the ACCSEA erroneously inserted the sum of $423,065 on line 2a ("Gross Receipts from business") of the worksheet to begin its calculations. Although this amount came directly from Schedule C of appellant's 2004 income tax return, he contends that the figure is artificially high because it includes Medicare reimbursements for work done in the last quarter of 2003. Appellant claims that these are items of "nonrecurring income" that should be excluded from income for child support purposes and that the better method to calculate his income is to "average" his 2003 and 2004 income. The trial court rejected this idea as "unfair" to his child. Appellant now argues on appeal that this constitutes an abuse of discretion. We disagree.
 {¶ 11} To begin, appellant cites no authority for the proposition that "gross receipts" should be averaged over two or more years to alleviate a problem with nonrecurring income items and we have found none in our own research. Courts may average gross income over a number of years when appropriate, see R.C.3119.05(H), but we find no examples of income averaging in situations like this. Moreover, gross receipts averaging in this context appears to contradict R.C. 3119.01(7)(e) which states "gross income" for purposes of determining child support does not include "[n]onrecurring or unsustainable income . . ." In short, if appellant had nonrecurring items of income, those items should be excluded from ACCSEA's support calculations altogether. Those items should not be averaged with gross receipts from prior years.
 {¶ 12} That said, assuming arguendo that the Medicare payments are nonrecurring income items, we believe that the record is such that neither the magistrate nor the trial court could have excluded them. Appellant agreed that his 2004 income "actually included about two and a half months worth of income that was generated in 2003." He never explained, however, how much income was involved. Thus, we find no way to know how much nonrecurring income items could conceivably be excluded.[3]
 {¶ 13} Finally, we are not persuaded that the Medicare payments can be characterized as nonrecurring income items. Nonrecurring income is defined as follows:
"an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis. `Nonrecurring or unsustainable income or cash flow item' does not include a lottery prize award that is not paid in a lump sum or any other item of income or cash flow that the parent receives or expects to receive for each year for a period of more than three years or that the parent receives and invests or otherwise uses to produce income or cash flow for a period of more than three years." R.C. 3119.01(8).
 {¶ 14} If appellant is a cash basis taxpayer — and we presume that he is if he reports Medicare payments when they are received rather than when the account receivable is accrued — he will continue to earn income in one tax year, but not collect it until the following year. Indeed, although there is no direct evidence of this below, one could assume that appellant billed for services rendered in the last quarter of 2004 but did not receive payment for those services, nor declare those payments as income for tax purposes or child support computation purposes, until 2005. One could also assume that appellant will continue to render services during one calendar year, but not be paid for those services until the following calendar year. Thus, it does not appear that these income items could fairly be characterized as "nonrecurring."
 {¶ 15} In any event, our review of the record reveals nothing arbitrary, unreasonable or unconscionable in the trial court utilizing the gross receipts set out in appellant's tax forms for purposes of calculating his child support obligation, or in the court's refusal to "average" the 2004 gross receipts with those he had in 2003. Therefore, we hereby overrule appellant's first assignment of error.
 III {¶ 16} Appellant's second assignment of error involves the ACCSEA spousal support figure, adopted by both the magistrate and the trial court, to reduce appellant's income and to compute his new child support obligation. The evidence reveals that appellant must pay his former wife, Kathyayini Patel, $7,000 per month ($84,000 per year) in permanent spousal support. The same circumstances that caused him to fall behind in child support obligation also caused him to fall behind on his spousal support obligation as well.[4] To alleviate his arrearages, appellant and his ex-wife agreed that she would assist him with his new medical practice and, in return, he would pay her fifty percent (50%) of his net profit, not as a salary, but to reduce his spousal support arrearages.[5]
 {¶ 17} Appellant argued that ACCSEA should have reduced his worksheet income by the amount he actually paid his ex-wife (including payment on arrearages) rather than the $84,000 that he was required to pay her pursuant to the divorce decree. The trial court rejected this argument because "spousal support overpayments contributed to his child support underpayments." Appellant argues that this constitutes an abuse of discretion. We agree.
 {¶ 18} The pertinent statutory provisions at issue here are line 10 of the R.C. 3119.022 child support computation worksheet. The worksheet allows for income adjustment for any "[a]nnual court-ordered spousal support paid to any spouse or former spouse" and R.C. 3119.05(B) which allows for deduction of any "court-ordered spousal support actually paid." ACCSEA focuses on the "court-ordered" language of these provisions and argues appellant should only be allowed to deduct the $84,000 he was ordered to pay per year. Any amount over that figure, ACCSEA continues, is not "court-ordered" and should not be deductible.
 {¶ 19} By contrast, appellant focuses his argument on the words "paid" and "actually paid" and argues that he should be allowed to deduct spousal support he actually paid to his ex-wife regardless of the divorce decree amount because that amount includes not only support ordered for that year, but also arrearages owed for past years.
 {¶ 20} Neither party has cited any authority interpreting these provisions and we have found none in our own research. We believe, however, that appellant's interpretation is more plausible. R.C. 3119.05(B) and line ten of R.C. 3119.022 refers to amounts "paid" or "actually paid" in spousal support. Had the General Assembly only intended for the amount of "court-ordered" support to be deducted, it would have stopped there and not included in the statute the words "paid" or "actually paid." It is axiomatic that statutes mean what they say, State v.McPherson (2001), 142 Ohio App.3d 274, 280, 755 N.E.2d 426;Lucas Cty. Auditor v. Ohio Bur. of Emp. Serv. (1997),122 Ohio App.3d 237, 246, 701 N.E.2d 703; Woods v. Farmers Ins. ofColumbus, Inc. (1995), 106 Ohio App.3d 389, 394, 666 N.E.2d 283, and the statutes at issue here allow for the deduction of spousal support that is paid.
 {¶ 21} We note that our interpretation of these provisions still gives meaning to the phrase "court-ordered." Appellant was ordered to pay his ex-wife $7,000 per month in spousal support. That obligation did not vanish because he failed to keep up with monthly payments. Instead, he accumulated an arrearage that now exceeds $300,000. Appellant is still liable for those arrearages and those arrearages constitute "court-ordered" support. Once paid, appellant should generally be permitted to deduct those payments when computing income for child support purposes unless, of course, a court concludes that one had the means to satisfy the obligations but simply refused to do so. Moreover, ACCSEA's interpretations of these provisions amounts to a denial of the statutory deduction if spousal support payments are not made in the year they are due. The General Assembly apparently intended for a deduction to be allowed when such obligations are "paid" or "actually paid" and we see no reason to believe that the legislature intended for support obligors to forfeit a deduction when paying arrearages. If that had been the General Assembly's intent, they could have stated that view in either of these two provisions.
 {¶ 22} For these reasons, we agree that the trial court unreasonably denied appellant a full deduction for spousal support payments he made in 2004 and we hereby sustain appellant's second assignment of error.
 IV {¶ 23} In his third assignment of error, appellant asserts that the ACCSEA support worksheet did not give him credit (on line 20) for expenses he incurred to provide health insurance for Trisha and that the trial court abused its discretion by adopting that worksheet without such a credit. ACCSEA counters that appellant did not raise this alleged deficiency in his objections to the magistrate's report and cannot raise it now for the first time on appeal. We agree.
 {¶ 24} Juv.R. 40(E)(3)(d) provides that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." We have reviewed the objections to the magistrate's decision and it does not appear that appellant raised this issue with the trial court. See In reDePaul v. Phillips, Mahoning App. No. 04MA271, 2005-Ohio-6784, at ¶ 20; In re Rachel K. Glorietta K., Lucas App. No. L-03-1061, 2004-Ohio-5239, at ¶ 17.
 {¶ 25} Further, assuming that the issue had been properly preserved, we would overrule the assignment of error. The computation worksheet attached to ACCSEA's post-trial memorandum "Exhibit C" reveals that appellant was, in fact, credited on line 20 for $2,160 he spent for his daughter's health insurance.
 {¶ 26} Presumably appellant's confusion on this issue stems from the fact that two worksheets are attached to ACCSEA's post-trial memorandum. The first (Exhibit A) does not show appellant being credited for health insurance. The second (Exhibit C) does, however, show such a credit. Also, the magistrate used a new support obligation figure of $1,376.26 which is the amount set forth at the end of the Exhibit C. Thus, it appears that appellant received credit for the health insurance he paid for his daughter. Accordingly, we hereby overrule appellant's third assignment of error.
 {¶ 27} In sum, having sustained appellant's second assignment of error, the trial court's judgment is hereby affirmed in part and reversed in part. We remand the matter to the trial court for a recalculation of the support figure using the amount of spousal support appellant actually paid to his ex-wife. Once that recalculation is made, the court may reapply the "ten percent" test from R.C. 3119.79(A) to determine if child support modification is warranted.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion. Appellant shall recover of appellee the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, P.J., Abele, J. McFarland, J.: Concur in Judgment and Opinion.
[1] The trial court designated the child's mother, Kimberly Tritipo (n/k/a Kimberly Metcalf) residential parent and awarded appellant visitation rights.
[2] Appellant recounted that declining revenues from insurance payments forced him to sell his practice in 2001 to Dr. Hasemeier, who then employed him as a physician with his practice — "On Call Medical Associates." Later, in an attempt to reduce his company's medical malpractice premiums, Dr. Hasemeier ordered appellant to stop performing certain medical procedures. Appellant refused and Dr. Hasemeier fired him. When appellant attempted to practice on his own, Dr. Hasemeier filed suit to enforce a covenant not to compete. As his expenses mounted, appellant ultimately filed a "Chapter 7" bankruptcy from which he was discharged in January 2004.
[3] Appellant concedes in his brief that this information "is not available" but explains that it was "not clear" to him that his support obligation would be calculated in this manner. The logical figure to plug into the "gross receipts" line of a child support worksheet would be the "gross receipts" reported on a Schedule C from a 1040 form. Appellant has the burden to present evidence to show that some of that income was nonrecurring.
[4] Conflicting evidence was adduced as to the amount of spousal support arrearages appellant owes. Kathyayini Patel testified that she thought that her ex-husband owed her approximately $350,000. Sally Young, an ACCSEA investigator, testified that it is $318,965.75.
[5] Although we have found no definitive statement in the transcript as to the amount appellant actually paid to Kathyayini, appellant's 2004 tax return shows him claiming a $99,604 deduction for alimony.