OPINION
{¶ 1} Appellant, Justine Manweiler, appeals from the February 7, 2003 judgment entry of the Ashtabula County Court of Common Pleas, Juvenile Division, awarding custody of her son, Noah Manweiler ("minor child"), to appellee, Linda Burgoon, the paternal grandmother.
 {¶ 2} On October 25, 2000, appellee filed a complaint seeking custody of the minor child.[1] On September 17, 2001, Michael A. Hiener ("GAL") was appointed as the minor child's guardian ad litem.
 {¶ 3} Renee Smith Howell ("Howell"), with Family Court Services, conducted home investigations at appellant's home on October 22, 2001, and at appellee's and Gilhousen's residence on November 6, 2001. In her report, which was filed on December 4, 2001, Howell indicated that although appellant's home itself appeared to be adequate, her parenting and discipline skills seemed to be too lax. Howell stated that appellee's and Gilhousen's house was also adequate and that they possessed good parenting and discipline skills.
 {¶ 4} Pursuant to the GAL's March 25, 2002 report, he recommended that appellee be granted custody of the minor child.[2]
 {¶ 5} An evidentiary hearing commenced on March 26, 2002, and was continued to April 3, 2002.
 {¶ 6} At the hearing, appellant testified that she lives with her parents and brother, and has been unemployed for the past five or six years. Appellant indicated that the minor child was in protective day care at Play and Learn Early Learning Center, Incorporated ("Play and Learn") from April 2000 to October 2000. Appellant stated that she wrote a letter on April 24, 2000, to Darla DiDonato ("DiDonato"), president and owner of Play and Learn, that Gilhousen is a convicted child molester and that she needed to look out for signs of molestation regarding the minor child. Appellant said that Gilhousen was not convicted for sexually abusing the minor child and no charges were brought against Gilhousen prior to her letter.
 {¶ 7} DiDonato testified for appellee that appellant regularly came with her father to pick up the minor child and that he often smelled of alcohol. According to DiDonato, appellant's father would drive appellant and the minor child. DiDonato stressed that both appellant and her father made a habit of coming into Play and Learn and discussing their concerns about the minor child and the hell that he has been through, in front of the minor child and others. DiDonato stated that the minor child would punch other children and laugh. DiDonato explained that on one occasion, appellant and her father were at Play and Learn and saw the minor child slap another child in the face and laugh. DiDonato said that appellant and her father did nothing, said nothing, and acted like it was okay. After DiDonato spoke with appellant regarding her inappropriate parenting, DiDonato stated that appellant discontinued bringing the minor child in near the end of October 2000. DiDonato indicated that she never noticed any signs of sexual and/or physical abuse but was concerned about the minor child's physical and emotional health as well as his sporadic attendance and nutrition.
 {¶ 8} With respect to appellee, DiDonato stated that appellee brought the minor child to visit Play and Learn before he started so that he could adjust to the environment. DiDonato stressed that she and appellee spoke outside the classroom about appellee's concerns regarding the minor child's appetite, emotional well-being, and appellant's allegations that Gilhousen sexually abused the minor child. DiDonato indicated that she never experienced any difficulty dealing with appellee.
 {¶ 9} Officer David Wassi ("Officer Wassi"), an officer with the Jefferson Village Police Department ("JVPD"), testified for appellee that appellant filed several reports through the Ashtabula County Children Services, as well as a couple of incidents with his department directly, in which she alleged abuse of the minor child by Gilhousen.[3] During the course of these reports and interviews, Officer Wassi believed that the minor child, who was about three years old, had a significant knowledge of sexual behavior and terminology. Officer Wassi expressed no concerns about the minor child being with appellee and/or Gilhousen, but had reservations about the minor child being with appellant. Officer Wassi stated that he believed that the minor child was being coached by appellant regarding the allegations against Gilhousen.
 {¶ 10} According to Gilhousen, who testified for appellee, he is employed as an inventory controller with Memorial Hospital of Geneva and resides with appellee. Gilhousen indicated that he was charged with gross sexual imposition when he was fourteen years old and pleaded guilty. Gilhousen stressed that he never sexually abused the minor child. Gilhousen was granted supervised visitation with the minor child in April 2000. Gilhousen said that the minor child has made comments to him that he cannot love him, only appellant. Gilhousen explained that the minor child said that Gilhousen is goofy in the head because he touches "peepees." Gilhousen noticed two occasions when the minor child pushed on appellee's breast and another incident when the minor child took a plastic screwdriver and put it down appellee's crotch. Gilhousen testified that the minor child makes inappropriate sexual comments and engages in swearing. Gilhousen believes that the minor child would suffer more emotional harm by remaining in appellant's custody.
 {¶ 11} Appellee testified that she is employed as a certified dietary manager with Geneva Health Center. According to appellee, the minor child has gotten progressively worse and more aggressive. Appellee stated that the minor child told her that he cannot love her, only appellant, and that appellee is the devil. Appellee stressed that she wants the minor child to have a good relationship with both Gilhousen and appellant. Appellee indicated that the minor child told her that appellant said that Gilhousen touches "peepees" and is crazy in the head. Appellee is concerned about the minor child's diet as well as his sexual comments and behavior, and believes that he is emotionally harmed. Appellee said that after the screwdriver incident, the minor child told her that he wanted to kiss her "titties." Appellee stated that appellant has denied her court-ordered visitation. However, appellee indicated that when the minor child stayed with her, she invited appellant over to feed the minor child, give him a bath, and get him ready for bed. Appellee stressed that if the court made it a condition that Gilhousen would have to move out of her residence in order for her to gain custody of the minor child, she would comply.
 {¶ 12} Dr. Paul Wnek ("Dr. Wnek") testified for appellant that he is a pediatrician with the Ashtabula Clinic and first saw the minor child in April 2000. Dr. Wnek stated that appellant brought in the minor child for a visit regarding allegations of sexual abuse by Gilhousen, however, no physical evidence was found.
 {¶ 13} Steve Heath ("Heath"), a marriage and family therapist with Catholic Charities, began counseling with the minor child in November or December of 2000. Heath submitted a report prior to the hearing in which he gave his opinion that the minor child should remain with appellant. At the hearing, however, Heath testified for appellant that he was not aware that appellee was seeking custody of the minor child. Heath stressed that his previous recommendation was based solely upon information that he received from appellant. Heath agreed that it would have been vital to speak with appellee had he known she was seeking custody. Heath indicated that the minor child suffers from a great deal of emotional distress due to the chaos and conflict between the two families. Heath said that he has been concerned with respect to whether the minor child has been coached by appellant. Also, Heath stated that the minor child has not shown any signals indicative of sexual abuse.
 {¶ 14} Clinical psychologist Robin R. Tener ("Dr. Tener") conducted an evaluation of the minor child and filed her report on September 16, 2002. In her report, Dr. Tener opined that the minor child adopted appellant's negative attitudes, beliefs, and feelings about Gilhousen and appellee as his own due to his young age. Dr. Tener explained that she cannot confirm that the minor child is a victim of sexual abuse by Gilhousen.
 {¶ 15} Pursuant to its February 7, 2003 judgment entry, the trial court ordered that the best interests of the minor child are served by awarding custody to appellee. The trial court stated that Gilhousen and appellant shall have visitations supervised by appellee with the minor child. The trial court determined that as a condition, Gilhousen shall not reside with appellee.[4] It is from that judgment that appellant filed a timely notice of appeal and makes the following assignment of error:
 {¶ 16} "The trial court erred in granting custody of [the minor child] to his paternal grandmother, [appellee], because [appellee] had not carried her burden and met the standard necessary to deny [appellant], natural mother of the [minor] child, custody."
 {¶ 17} In her sole assignment of error, appellant argues that the trial court erred in granting custody of the minor child to appellee because appellee did not carry the burden necessary to deny appellant custody. Appellant alleges that there is no competent, credible evidence in the record to support the conclusion that she was not a suitable custodian for the minor child or that custody should be given to appellee. Pursuant to her supplemental brief, appellant stresses that the trial court's February 10, 2005 judgment entry demonstrates that she was deprived custody of the minor child. Specifically, appellant maintains that the trial court erred in relying on the concerns of Heath and the GAL to support its finding that she was unsuitable to have custody of the minor child because it was detrimental to the minor child to be in her custody.
 {¶ 18} This court stated in Walther v. Newsome, 11th Dist. No. 2002-P-0019, 2003-Ohio-4723, at ¶ 12-15, that:
 {¶ 19} "R.C. 2151.23 gives juvenile courts exclusive jurisdiction to `determine the custody of any child not a ward of another court of this state.' With respect to this determination, the Supreme Court of Ohio has held that:
 {¶ 20} "`In an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child.' In re Perales
(1977), 52 Ohio St.2d 89 * * *, at syllabus. See, also, Reynolds v. Goll
(1996), 75 Ohio St.3d 121 * * *.
 {¶ 21} "Parents who are deemed suitable are considered to have the paramount right to custody of their minor children. Perales at 97. The right of parents to raise their children, coupled with the concomitant right of children to be raised by their parents, may not be interfered with unless the parent is unfit. Quilloin v. Walcott (1978), 434 U.S. 246
* * *. Under Perales, parental custody is presumed to be in the best interests of the child unless it can be shown that placement with a parent will be detrimental to the child. In re Porter (1996),113 Ohio App.3d 580, 589 * * *.
 {¶ 22} "A trial court's determination of whether a parent is unsuitable is within the court's sound discretion. The power of the trial court to exercise discretion in child custody determinations is particularly important and should be accorded the utmost respect. Therefore, a reviewing court should be guided by the presumption that the trial court's findings were correct. Reynolds at 124. A trial court's determination of whether a parent has forfeited his or her right to custody is a factual determination that will not be reversed by a reviewing court if it is supported by some competent, credible evidence. Id. Absent an abuse of discretion, an appellate court will not reverse a trial court's determination in a child custody matter. Davis v.Flickinger (1997), 77 Ohio St.3d 415, 416-417 * * *. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219 * * *." (Parallel citations omitted.)
 {¶ 23} We also stated in In re Fronk (Oct. 26, 1984), 11th Dist. No. 1167, 1984 Ohio App. LEXIS 11175, at 4, that: "* * * a court under [R.C.2151.23(A)(2)] cannot base its grant of custody to the nonparent solely on a finding that it is in the best interest of the child." See, also,Masitto v. Masitto (Dec. 14, 1984), 11th Dist. No. 10-094, 1984 Ohio App. LEXIS 11888, at 5. Again, before the court can award custody to the nonparent, there must be a finding of parental unsuitability. Perales,
supra, at syllabus; In re Fronk at 5; Masitto at 6.
 {¶ 24} In the case at bar, the trial court used a "best interest" test in its February 7, 2003 judgment entry when it concluded that "the best interests of the [minor] child are served by awarding custody of the [minor] child to [appellee]." Pursuant to this court's remand, on February 10, 2005, the trial court made a finding of parental unsuitability. According to its February 10, 2005 judgment entry, the trial court specifically stated the following:
 {¶ 25} "The testimony in the case confirms that the father [Gilhousen] has been convicted or adjudicated as having committed a delinquency offense of gross sexual imposition. [Gilhousen] was 14 years old at the time this case was adjudicated. [Gilhousen] received counseling for this offense at the time the case made its way through the court. An additional concern to the Court and borne out by the testimony is [Gilhousen's] lack of cooperation with counseling of his son, [the minor child], which was Court ordered in the current custody dispute. The counselor, [Heath], testified that it was very important for him [Heath] to meet with [Gilhousen] and his son, [the minor child], together. Although [Gilhousen] acknowledged that he would participate, he never followed up with the counseling schedule. The foregoing evidence this Court finds to be credible and bearing adversely upon [Gilhousen's] suitability to parent his son, [the minor child].
 {¶ 26} "Regarding [the minor child's] mother, [appellant], the Court finds that the evidence indicates her conduct and communication with her son, [the minor child], regarding his father [Gilhousen] raised concerns as to her communicating to [the minor child] and others that the concept that [Gilhousen] was a sex offender and would likely abuse or offend his own son, [the minor child]. The Court finds that the evidence and testimony credibly demonstrate that [appellant] coached her [s]on, [the minor child], that his father, [Gilhousen], was a sex offender and would offend [the minor child]. The conduct of [appellant] was a concern to the counselor, [Heath], and also to the [GAL] * * *. The Court finds that the within testimony bears directly on [appellant's] suitability as a parent to her son, [the minor child], and further finds that this testimony adversely affects her ability and suitability to parent her son, [the minor child].
 {¶ 27} "The Court in formulating its opinion of February 7, 2003 also relied heavily on the report of the [GAL] * * *. The Court adopts and finds that the report of the [GAL] filed March 25, 2002 and the addendum thereto filed November 7, 2002 are adopted as findings of this Court and bear directly on the suitability of both parents, [Gilhousen and appellant].
 {¶ 28} "* * *
 {¶ 29} "The Court therefore finds that the [minor] child's mother, [appellant], and the [minor] child's father, [Gilhousen], are both unsuitable to exercise parental rights and responsibilities at this time, and that the custody of the [minor child], as previously stated by this Court, is granted to his paternal grandmother, [appelleee]."
 {¶ 30} We agree.
 {¶ 31} Based on the record, competent credible evidence exists which supports the trial court's finding that appellant is unsuitable. Again, although Heath submitted a report prior to the hearing in which he opined that the minor child should remain with appellant, at the hearing, he testified that he was not aware that appellee was seeking custody of the minor child. Heath stressed that his previous recommendation was based solely upon information that he received from appellant. Heath agreed that it would have been vital to speak with appellee had he known she was seeking custody. Heath indicated that the minor child suffers from a great deal of emotional distress due to the chaos and conflict between the two families. Heath said that he has been concerned with respect to whether the minor child has been coached by appellant that Gilhousen was a sex offender and would offend the minor child. Appellant's conduct was also a concern to the GAL, who recommended that appellee be granted custody of the minor child.
 {¶ 32} Also, DiDonato had great concerns regarding the minor child's well-being. Specifically, DiDonato was concerned about the minor child's outright cruel and aggressive behavior toward others, which appellant was aware of and did nothing, and was concerned about the minor child's physical and emotional health, sporadic attendance, and poor nutrition. DiDonato stressed appellant's inappropriate parenting skills as well as appellant's poor judgment in endangering the minor child with respect to permitting her father, who smelled of alcohol, to drive the minor child. Also, Officer Wassi, Gilhousen, and appellee all testified that the minor child had a significant knowledge of sexual behavior and terminology. Officer Wassi stated that he was concerned about the minor child being with appellant. Further, Howell indicated in her report that appellant's parenting and discipline skills were too lax.
 {¶ 33} In addition, appellant's allegations of sexual abuse against Gilhousen with respect to the minor child have not been substantiated. We agree with the trial court that appellant's baseless allegations are nothing more than an attempt to destroy the relationship between the minor child, Gilhousen, and appellee, which is detrimental to the minor child. Thus, pursuant to Perales, supra, the trial court had competent, credible evidence to support its finding that appellant is unsuitable.
 {¶ 34} For the foregoing reasons, appellant's sole assignment of error is not welltaken. The judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.
O'Neill, J., Christley, J., Ret., Eleventh Appellate District, sitting by assignment, concur.
[1] The minor child was born on March 12, 1998. The minor child's natural parents are appellant, who had custody, and James Gilhousen ("Gilhousen"), appellee's son.
[2] The GAL filed an amended report on November 7, 2002, in which he again recommended that appellee be granted custody of the minor child.
[3] With respect to appellant's allegations of physical abuse, the JVPD was unable to determine that any assault occurred, and the charges were dismissed. Also, regarding appellant's allegations of sexual abuse, the JVPD had no grounds and, thus, did not submit the matter to the prosecutor.
[4] On December 21, 2004, this court issued a judgment entry stating that the trial court used a "best interest" test in its February 7, 2003 judgment entry, but failed to make a finding of parental unsuitability. Thus, we remanded this case to the trial court for the sole purpose for the trial court to determine and make an express finding regarding parental unsuitability. The trial court filed a judgment entry on February 10, 2005. In addition, on March 4, 2005, appellant filed a motion for leave to file a supplemental brief to address new issues raised as a result of the trial court's February 10, 2005 judgment entry, which was granted by this court on March 23, 2005. Appellant filed her supplemental brief on April 11, 2005. Appellee filed an answer brief on April 27, 2005.