DECISION AND JUDGMENT ENTRY
{¶ 1} Nickie Kovaleski appeals the trial court's decision awarding custody of her biological child, Joshua Wesley Kovaleski, to a paternal aunt, Judith Kimble. She contends that the evidence does not support the trial court's determinations that she is an unsuitable parent and that it would be detrimental to Joshua for her to retain custody. We conclude that the court's findings are supported by competent, credible evidence. The record reveals that Kovaleski did not take Joshua to court-ordered therapy for his emotional issues, did not make her son do eye therapy exercises as instructed by his doctor, did not timely schedule a follow-up appointment with a specialist Joshua saw for stomach problems, and did not timely report to the specialist that Joshua was unable to take the medication to treat his stomach problems. Therefore, the court did not abuse its discretion by concluding that Kovaleski is an unsuitable parent.
 {¶ 2} Kovaleski also argues that the court erred by failing to apply the R.C. 3109.04(E)(1) modification of custody standard in this case. We disagree. Because a nonparent was seeking custody of Joshua and the court had not previously considered whether Kovaleski was a suitable parent, the trial court properly applied the Perales unsuitability standard rather than the modification of custody standard. Therefore, we affirm the trial court's judgment.
 {¶ 3} From January of 1999 to August of 2003, the child's father, Paul J. Bonar, was Joshua's residential parent and Kovaleski had visitation rights. This arrangement ended in late August of 2003 when Bonar died following an automobile accident in which the child was a passenger. After Bonar's death, the court appointed Kovaleski the residential parent and legal guardian pending a final hearing. Subsequently, Kovaleski and Bonar's extended family (Marita Kimble, a paternal cousin; Judith Kimble, a paternal aunt; Terry Kimble, a paternal uncle, and Olive Bonar, the paternal grandmother) agreed that Kovaleski would be the residential parent and that Bonar's family would have visitation rights.
 {¶ 4} In August of 2004, Kovaleski requested permission to move with the child to Georgia. The Bonar family objected and filed both a custody petition and a motion to modify custody. When the court held a hearing regarding the motion, Kovaleski stated that she no longer intended to move to Georgia.
 {¶ 5} At the hearing, the evidence focused mainly on Kovaleski's failure to take the child to all scheduled counseling and doctor appointments. Between May of 2004 and September of 2004, Kovaleski did not take the child to any court-ordered counseling sessions that were designed to help him cope with the loss of his father. Kovaleski thought the child was doing fine and decided the counseling did not need to continue over the summer. The counselor agreed it is not unusual for parents to discontinue counseling sessions over the summer months, but was unaware until August of 2004 that the court had mandated the counseling.
 {¶ 6} The child also has a visual perception problem, which necessitated a vision therapy program. The child missed several doctor appointments and Kovaleski told the guardian ad litem she did not require the child to do the doctor-recommended exercises at home because the exercises were "boring." However, Kovaleski testified that Joshua did do the exercises and the child's doctor noted that he made progress throughout the course of his treatment.
 {¶ 7} In April of 2004, the child saw a specialist for stomach problems. The doctor prescribed Prevacid and ordered a follow-up visit for two months later, but Kovaleski did not schedule a follow-up until October 4, 2004. Additionally, Kovaleski did not give the child the medication because he was unable to swallow the pills. She made no attempt to contact the doctor's office to find an alternate solution. Thus, between April and October of 2004, the child's acid reflux and vomiting continued because Kovaleski did not see that her child took the medication or call the doctor for a solution. As of December of 2004, the child's condition had improved.
 {¶ 8} The guardian ad litem stated the relationship between Kovaleski and her child "feels tense" and is not a nurturing one. She described the relationship with Kimble as a comfortable, regular, nurturing relationship. The guardian recommended that the court designate Kimble the residential parent and legal custodian based on Kovaleski's "inconsistent attention" to the child's medical needs, the child's inconsistent attendance at scheduled therapy appointments, and inconsistent follow through with vision therapy appointments. The guardian ad litem stated: "[T]he lack of Ms. Kovaleski's consistent and timely attention to meet [the child's] medical needs, lead[s] me to the conclusion that it would be detrimental to [the child's] emotional and physical well being for the Court to leave him in the custody and care of his mother."
 {¶ 9} The court found that Kovaleski is unsuitable to raise her child and awarded custody to Kimble. The court stated: "To continue to allow [Kovaleski] to raise her son and retain custody would be detrimental to the child. She has failed to provide suitable treatment for her son's mental and physical health."
 {¶ 10} Kovaleski assigns the following errors:
First Assignment of Error:
The trial court erred and abused its discretion by finding that appellant is unsuitable to raise her son and that allowing her to raise her son and retain custody would be detrimental to the child.
Second Assignment of Error:
The trial court erred by awarding custody of the child to the paternal aunt without having before it sufficient evidence to do the balancing test required by R.C. 3109.04(E)(1)(a).
 {¶ 11} In her first assignment of error, Kovaleski argues that the trial court abused its discretion by finding that she is unsuitable to raise her son and that it would be detrimental to her son's health to allow her to continue raising him.
 {¶ 12} R.C. 2151.23 gives juvenile courts exclusive jurisdiction to "determine the custody of any child not a ward of another court of this state." In a custody proceeding under R.C.2151.23(A)(2) between a parent and a nonparent, the court may not award custody to the nonparent without first determining that the parent is unsuitable to raise the child, i.e. without determining by a preponderance of the evidence that the parent abandoned the child, contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child. In re Perales (1977),52 Ohio St.2d 89, 369 N.E.2d 1047, at syllabus.
 {¶ 13} A trial court has broad discretion in determining custody matters. Reynolds v. Goll, 75 Ohio St.3d 121, 124, 1996-Ohio-153, 661 N.E.2d 1008. Consequently, we can only sustain a challenge to a trial court's custody decision upon a finding that the trial court abused its discretion. Davis v.Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260,674 N.E.2d 1159. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying an abuse of discretion standard, we are not free to merely substitute our judgment for that of the trial court. Inre Jane Doe 1 (1991), 57 Ohio St.3d 135, 137-138,566 N.E.2d 1181. A deferential review in a child custody case is appropriate because much may be evident in the parties' demeanor and attitude that does not translate to the record well. Davis,77 Ohio St.3d at 419.
 {¶ 14} It is undisputed that the right of a parent to raise her own child is an "essential" and "basic civil right." In reMurray (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169, citingStanley v. Illinois (1972), 405 U.S. 645, 651, 92 S.Ct. 1208,31 L.Ed.2d 551. Thus, natural parents have a paramount right, as against third parties, to custody of their children. Murray,
supra; Clark v. Bayer (1877), 32 Ohio St. 299, 310. This right, however, is not absolute. See In re Johnson (Mar. 29, 1995), Ross App. No. 94CA2003.
 {¶ 15} Here, the trial court found that Kovaleski is unsuitable to raise her son and an award of custody to her would be detrimental to Joshua. The court based its decision on Kovaleski's failure to provide proper treatment for Joshua's mental and physical health. Having reviewed the record, we conclude that there is competent, credible evidence to support this finding. Thus, the court did not abuse its discretion by determining that Kovaleski is an unsuitable parent.
 {¶ 16} First, although the trial court ordered counseling for Joshua to help him deal with his father's death and his current circumstances, Kovaleski unilaterally decided he did not need to continue the counseling. Joshua's counselor testified she believed he would benefit from further counseling and never instructed Kovaleski to discontinue the sessions. Although her son was diagnosed with a visual perception problem and instructed to participate in a vision therapy program, Joshua missed six out of thirteen therapy appointments. Kovaleski and Joshua informed the guardian ad litem that Joshua was not doing the eye therapy exercises at home as directed by the doctor because they were "boring." And, although Joshua had an endoscopy that revealed stomach problems, he did not take the prescribed medication to treat the condition because he was unable to swallow pills and Kovaleski did not contact the doctor to request a different form of the medication. Although the specialist instructed Kovaleski to bring Joshua in for another appointment in June of 2004, Kovaleski waited until October of 2004 to bring her son for follow-up care. Finally, the specialist noted that Joshua was obese for his age and height and had gained fourteen pounds in the six months between the appointments. This evidence supports the trial court's finding that an award of custody to Kovaleski would be detrimental to her child.
 {¶ 17} We recognize Kovaleski testified Joshua did perform the eye exercises at home and that she crushed her son's medication and mixed it with his food when he refused to swallow the pills. Kovaleski also testified the Bonar family allowed Joshua to eat "junk food" when they had him, causing his significant weight gain. However, the testimony of the guardian ad litem contradicted much of Kovaleski's testimony. And, as the finder of fact, the court was in the best position to observe the witnesses' demeanor and weigh their credibility. Obviously, the court discredited Kovaleski's claims.
 {¶ 18} Since there is some rational basis in the record to support the trial court's findings that Kovaleski is unsuitable to raise her son and allowing her to raise Joshua would be detrimental to him, we overrule Kovaleski's first assignment of error.
 {¶ 19} In her second assignment of error, Kovaleski argues that the court erred by awarding custody of Joshua to his paternal aunt without having sufficient evidence to conduct the balancing test required by R.C. 3109.04(E)(1)(a).
 {¶ 20} R.C. 3109.04(E)(1)(a) states:
The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
* * *
(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
 {¶ 21} In a custody dispute between a parent and a nonparent, custody cannot be awarded to the nonparent without the court first making a parental unsuitability finding. Perales, supra;In re Bonfield, 96 Ohio St.3d 218, 2002-Ohio-4182,773 N.E.2d 507, at ¶ 43; Masitto v. Masitto (1986), 22 Ohio St.3d 63, 68,488 N.E.2d 857. In Bragg v. Hatfield, 152 Ohio App.3d 174,2003-Ohio-1441, 787 N.E.2d 44, we noted that once custody has been awarded to a nonparent, the court will not apply thePerales unfitness standard to a later request for custody modification. Instead, custody modification in that situation is determined under the R.C. 3109.04 change of circumstances standard. Id. In other words, if a parent has custody of her minor child, a custody dispute with a nonparent is determined under the Perales standard; but, if a custody award has previously been made to a nonparent, the party seeking to modify that award must show a change in circumstances even if the noncustodial party is a parent and the custodial party is a nonparent. See, e.g., Wilburn v. Wilburn (2001),144 Ohio App.3d 279, 283-284, 760 N.E.2d 7; In re Whiting (1990),70 Ohio App.3d 183, 187, 590 N.E.2d 859. But see In re James,163 Ohio App.3d 442, 2005-Ohio-4847, 839 N.E.2d 39 (holding it is unconstitutional to require a parent to demonstrate a change in circumstances under R.C. 3109.04(E)(1)(a) when seeking return of custody from a nonparent).
 {¶ 22} Here, the trial court initially awarded custody to the child's natural father and, after his death, awarded custody to Kovaleski, the child's natural mother. Unlike the parent inBragg, Kovaleski never lost custody of her child to a nonparent, either by agreement or pursuant to a court order. As we recognized in Bragg, if a parent contracts away custody rights, that parent is deemed to have forfeited any paramount custody right and the general custody modification change of circumstances standard will apply rather than the Perales
unfitness standard. Thus, because Kovaleski has not previously agreed or contracted away her primary right to her minor child's custody, she has not forfeited her paramount custody rights and the Perales unfitness standard applies as between her and Joshua's paternal aunt.
 {¶ 23} Other cases have also addressed this issue and concluded that the Perales unfitness standard rather than the change of circumstances standard is applicable in similar situations. For example, in In re Medure, Columbiana App. No. 01C03, 2002-Ohio-5035, at ¶ 31, the Seventh District Court of Appeals found R.C. 3109.04, which governs custody disputes between parents and nonparents arising as part of a divorce, requires the application of some type of Perales parental unsuitability test before custody may be awarded to a nonparent. Likewise, in In re Manweiler, Ashtabula App. No. 2003-A-0032,2005-Ohio-2657, the Eleventh District Court of Appeals held that the trial court correctly applied the Perales unsuitability test in awarding custody of a minor child to his paternal grandmother. See, also, Walther v. Newsome, Portage App. No. 2002-P-0019, 2003-Ohio-4723; In re Fout, Delaware App. No. 04CAF05036, 2005-Ohio-4344.
 {¶ 24} Thus, although the paternal aunt's custody request was styled as a motion to "modify" custody, this case represents the first instance in which a non-parent has sought custody of the child from a natural parent through a contested proceeding. Consequently, the trial court correctly decided this matter under the Perales unfitness or unsuitability standard rather than the change in circumstances standard. Accordingly, Kovaleski's second assignment of error is without merit and is overruled.
 {¶ 25} Having found no merit in either assignment of error, we affirm the judgment of the trial court.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. Kline, J. Concur in Judgment and Opinion.