[Cite as *Cain v. Cain*, 2017-Ohio-708.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**PORTAGE COUNTY, OHIO**

| | | |
|---|---|---|
| JULIE M. CAIN, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-P-0011** |
| JOHN A. CAIN, | : | |
| Defendant, | : | |
| LYNNE BENEK, et al., | : | |
| Third-Party Intervenor-Appellant. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Domestic Relations Division, Case No. 2009 DR 00597.

Judgment: Affirmed.


*Brian A. Smith*, 755 White Pond Drive, Suite 403, Akron, OH 44320 (For Plaintiff-Appellee).

*Lynne L. Benek*, pro se, 237 Sobul Avenue, Akron, OH 44305 (Third-Party Intervenor-Appellant).

*Melissa R. V. Roubic*, Roubic Law Office, L.L.C., 218 West Main Street, Suite #150, Ravenna, OH 44266-2744 (Guardian ad litem).


THOMAS R. WRIGHT, J.

{¶1} Appellant, Lynne Benek, appeals the trial court's determination overruling her motion, as the third-party intervenor in the underlying divorce action, for permanent

custody of her son's minor child and naming appellee, Julie M. Cain, as the child's sole residential parent and legal custodian. Appellant maintains that the trial court erred in not considering evidence tending to establish that appellee is an unsuitable parent. For the following reasons, the custody ruling is affirmed.

{¶2} Appellant is the mother of John A. Cain. In September 2007, appellee and John were married. Approximately one year later, appellee became pregnant with the couple's sole child, Emily. However, before the child was born in July 2009, the couple separated. According to appellee, John was experiencing mental problems and could be physically intimidating and abusive.

{¶3} In October 2009, appellee filed for divorce against John, claiming that they were no longer compatible. Under the temporary orders in effect during the pendency of the case, appellee was designated the child's sole residential parent, while John was ordered to pay child support and was only granted supervised visitation. Even prior to the issuance of the final divorce decree, disputes arose regarding John's visitation with his daughter. He moved the trial court to hold appellee in contempt for not following the existing visitation order. On the other hand, she requested that he be tested for illegal drugs, asserting that he could pose a threat to the child.

{¶4} A stipulated final divorce decree was rendered in May 2011, under which appellee was again named the child's sole residential parent and legal custodian. The decree also provided for increases in the amount of John's visitation, but also required that the visitation be supervised by the paternal grandmother, appellant.

{¶5} Immediately after her separation from John, appellee and the child went to live with her parents, Larry and Jean Beck, in Kent, Ohio. This arrangement stayed the

2

same until some point in 2013, when appellee and the child left the Beck home to reside with her new boyfriend, Steven Haviland. On October 29, 2013, during a prearranged exchange of custody at a local restaurant, John and Haviland had an altercation which led to the filing of disorderly conduct charges against both men. Approximately fourteen days later, Haviland was charged with one count of domestic violence, predicated upon a separate altercation between him and appellee. The latter altercation occurred in the child's presence.

{¶6} In light of the foregoing two events, in February 2014, John moved the trial court to reallocate parental rights by naming him the child's residential parent. A hearing on this motion was scheduled for September 2014; however, John withdrew the motion when appellee agreed to not permit Haviland to have any further contact with the child.

{¶7} Within two months of reaching this agreement, appellee stopped allowing John to exercise his visitation with the child. According to her, the child accused John of engaging in inappropriate behavior. A subsequent investigation into the accusation failed to uncover any independent evidence supporting the child's statement. Hence, appellee never moved the trial court to terminate John's visitation, and John moved for appellee to be held in contempt for failing to comply with the existing visitation order.

{¶8} At some point in early 2015, appellee posted photographs on social media showing her and the child with Haviland. Consequently, John filed a second contempt motion against her on the basis that she had violated the September 2014 agreement prohibiting contact between Haviland and the child. Before the trial court could proceed on this motion, appellee married Haviland and again started cohabitating with him and

3

the child. As a result, appellant filed an emergency motion to give her, as the paternal grandmother, temporary legal custody over the child. Appellant asserted that it was not safe for the child to live with Haviland and appellee.

{¶9} The trial court went forward on appellant's motion first, holding a hearing within five days of its submission and issuing an immediate judgment ordering transfer of legal custody to appellant. Therefore, the child resided solely with appellant for nine months.

{¶10} Upon obtaining legal custody, appellant was granted leave by the trial court to intervene in the divorce action. She then moved for permanent legal custody of the child, arguing that appellee raised illegitimate reasons to stop John from exercising his visitation rights and that John had been subject to too much mental stress to take custody himself.

{¶11} At some point after losing custody of the child, appellee was involved in a second domestic violence altercation with Haviland. This led her to end her relationship with Haviland and move back into her parents' residence. Thus, at the final evidentiary hearing on all pending motions, she orally moved the trial court to return legal custody of the child to her. During her testimony, she stated that her relationship with Haviland was over and that she planned to file for a divorce when she was financially able.

{¶12} The evidence presented at the final hearing established that appellant was able to provide a stable environment for the child, and that the child did not experience any major problems in living with her. However, the evidence also demonstrated that appellee had always provided a safe and stable home for the child, so long as she and the child were residing with her parents. That is, the evidence showed that, regardless

4

of where she was living, the child was loved and well-nurtured. Even though appellant tried to raise issues as to appellee's competency as a mother, the majority of the contested evidence concerned the general ill-will between John, appellee, and the two families.

{¶13} In its final judgment, the trial court found that appellant failed to prove that appellee was an unfit parent. Based upon this, the trial court concluded that appellee, as the mother, had a superior right to the child over the grandmother, and thus ordered that legal custody of the child be returned to her, conditioned upon the requirement that she continue to reside with her parents. In addition, the court reaffirmed the separate visitation rights of appellant and John, but again ordered that any visitation with John had to be supervised by appellant.

{¶14} Appellant is the only party to appeal the foregoing judgment. She asserts four assignments of error for review:

{¶15} "[1.] The trial court committed error in dismissing the contempt for parenting time. There is a pattern of conduct on the issues that should have been considered when weighing the best interest of the child.

{¶16} "[2.] The trial court committed error in dismissing the second contempt when [appellee] willfully and knowingly allowed contact between [the child] and Steven Haviland. In fact, she married him knowing that she was in violation of the order.

{¶17} "[3.] The trial court committed error in not allowing evidence that would have helped to make the determination of the best interest and unfitness. Julie has been neglectful of [the child] by endangering her when she married Steven. She also has shown a complete disregard in the past for the authorities.

5

{¶18} "[4.] The trial court committed error in not ordering standard parenting time. Mother is unwilling to agree to this time without an order of the court."

{¶19} Under her first two assignments, appellant argues that the trial court erred in finding appellee guilty of contempt under the two contempt motions that were pending at the time of the final evidentiary hearing. As noted above, each of these motions was filed solely by John, and sought the enforcement of prior court orders to which appellant was not a party: i.e., John's visitation rights and the requirement that appellee not allow any contact between Haviland and the child. Since the disposition of these motions had no direct effect upon appellant's ability to obtain permanent custody of her grandchild, she does not have standing to contest the contempt issues in this appeal.

{¶20} As a general proposition, the party bringing an appeal can only challenge trial court rulings that are injurious to her:

{¶21} "Standing prevents a person from bringing a case to protect the rights of a third party. *State ex rel. Rien Constr. Co. v. Rice* (May 7, 1999), Trumbull App. No. 99-T-0025, unreported. Similarly, a party generally may not prosecute an appeal to protect the rights of a third party. An appellant may not assign errors committed against a non-appealing party, unless the errors are prejudicial to the rights of the appellant. *In re Smith* (1991), 77 Ohio App.3d 1, 13, 601 N.E.2d 45. An appealing party is not permitted to vicariously assert that a non-party's constitutional due process rights were violated. *In re Spencer Children* (Mar. 22, 1999), 1999 Ohio App. LEXIS 1129, Butler App. No. CA98-05-103, unreported." *Mulqueeny v. Mentor Chiropractic Ctr., Inc.*, 11th Dist. Lake No. 2001-L-034, 2002 Ohio App. LEXIS 1671, *4-5.

{¶22} In this case, if John believed that the disposition of the contempt motions

6

was prejudicial to him, he had to bring a separate appeal. Notwithstanding the fact that appellant is John's mother, she cannot raise issues pertaining to his rights as part of her appeal. For this reason, the merits of her first two assignments cannot be addressed.

{¶23} The foregoing analysis further applies to appellant's fourth assignment, in which she contests the trial court's new visitation order. Although part of the new order is applicable to her, she only challenges the order as it pertains to John, arguing that he is entitled to visitation pursuant to the trial court's standard parenting order. Given that any error regarding the extent of John's visitation would not be prejudicial to appellant's rights, she again lacks standing to argue the point.

{¶24} Under her third assignment, appellant asserts two challenges to the trial court's decision to again designate appellee as the child's residential parent and legal custodian. First, she contends that the court erred in not allowing her to present evidence of a confrontation between members of her family and Haviland during a soccer practice for the child. This evidence consisted of a video on appellant's cell phone. Second, she maintains that the trial court did not give sufficient weight to certain factors in deciding whether appellee was not a suitable parent.

{¶25} In relation to the evidentiary question, the record shows that considerable testimony was given about the "soccer practice" confrontation. The testimony indicates that appellee originally brought the child to the practice by herself. However, when she saw members of appellant's family, including John and his father, present, she took the child off the playing field, left the area in her car, but returned with Haviland. A verbal confrontation ensued between John, his father, and Haviland.

{¶26} While cross-examining appellee, appellant moved for permission to show

7

a video of the incident that she had recorded on her cell phone. Supposedly, the video would have shown that it had been appellee and Haviland who escalated the situation. The trial court responded that the video could not be shown because the courtroom did not have a video player. However, the court also stated that appellant would be allowed to give a full description of the video as part of her own testimony. Appellant accepted this ruling, but when she was afforded her opportunity to testify, she made no reference to the video. Furthermore, appellant never made a proffer on the record concerning the substance of the video.

{¶27} When a party fails to provide a statement at trial regarding the substance or nature of excluded evidence, an appellate court cannot determine whether the trial court's evidentiary ruling was prejudicial. *State v. Schofield*, 11th Dist. Portage No. 98-P-0099, 1999 Ohio App. LEXIS 5945, *6 (Dec.10, 1999). Under such circumstances, the appellant is not permitted to contest the evidentiary ruling on appeal. *Id.*

{¶28} In seeking to supplement the evidentiary materials concerning the "soccer practice" confrontation, appellant attached to her appellate brief an alleged copy of a police report on the incident. However, there is nothing in the record to establish that this report was submitted to the trial court for consideration as evidence during the final hearing. As an appellate court, the scope of our review is limited to materials that were before the trial court; new evidence cannot be accepted and reviewed on appeal. *State v. Mulhollen*, 119 Ohio App.3d 560, 567, 695 N.E.2d 1174 (11th Dist.1997). Therefore, appellant has failed to establish any error in the trial court's evidentiary rulings as they pertain to the "soccer practice" confrontation.

{¶29} In relation to the actual merits of the trial court's decision to return custody

8

of the child to appellee, appellant argues that the trial court failed to give proper weight to the fact that, when appellee married Haviland and took the child to live with him, she was violating the existing "no contact" order. Appellant also argues that, by cohabitating with Haviland, she was endangering the child's health and safety.

{¶30} As to the violation of the court order, the record shows that appellee gave an acceptable explanation for her actions; i.e., she testified that she was unaware of the specific language of the court order, and that she thought the "no contact" order was no longer effective once certain charges against Haviland and John were dismissed. More importantly, appellee told the trial court that she had separated from Haviland following a second domestic violence incident, and that she now intended to divorce him. Under these new facts, the child would have no further contact with Haviland.

{¶31} The record readily supports the conclusion that, except for the effects of her relationship with Haviland, appellee provided a stable environment for the child, and that the child was thriving under her care. Accordingly, since appellee will no longer be subjecting the child to Haviland, there is no reason to find that living with appellee could be detrimental to the child's well-being. As to this point, it must be emphasized that the trial court conditioned its custody order upon the requirement that appellee continue to reside with her parents. This means that appellee cannot take the child into a new living environment without court approval. Given the imposition of this condition, there can be no dispute that the trial court fully considered appellee's prior behavior in making its custody determination.

{¶32} When a non-parent seeks to replace a parent as the legal custodian of a minor child, the parent's fundamental right to raise her own child is invoked. *Baker v.*

9

*Baker*, 113 Ohio App.3d 805, 810, 682 N.E.2d 661 (9th Dist.1996), quoting *In re Perales*, 52 Ohio St.2d 89, 96, 369 N.E.2d 1047 (1977). As a result, a higher standard must be satisfied before the non-parent can prevail; i.e., the parent must retain custody unless she is found to be unsuitable. *Ives v. Ives*, 9th Dist. Lorain No. 02CA008176, 2003-Ohio-3505, ¶13. "Suitability or lack thereof, essentially measures the harmful effect of the custody on a child." *Id.*

{¶33} In this case, there is no evidence upon which it could have justifiably been found that the child would be subject to harm while residing at the Becks' home under appellee's care. Under such circumstances, appellee is a suitable parent, and her right to raise her own child is controlling over appellant's interest as a grandmother. Hence, since the trial court did not err in denying appellant's motion for continuing custody and re-designating appellee as the child's residential parent and legal custodian, appellant's third assignment is without merit.

{¶34} For the foregoing reasons, the judgment of the trial court is affirmed.


TIMOTHY P. CANNON, J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.


_____


DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶35} I respectfully dissent and would reverse the decision of the domestic relations court to remove the minor child from the custody of her paternal grandmother/appellant, Lynn Benek. The evidence before the domestic relations court

10

readily supports a finding of parental unsuitability and the best interests of the minor child require that she remain in the custody of the paternal grandmother.

**{¶36}** The issue of the mother's unsuitability is broader than the fact that she jeopardized the child's welfare by her relationship with the abusive Haviland. The mother's relationship with Haviland was not simply an isolated bad decision on her part resolved, in the domestic relations court's words, by Haviland "now [being] out of the picture." Rather, the mother's conduct demonstrates a consistent disregard of the father's legal rights to the detriment of the child's relationship with him. Such conduct justifies the continued placement of the child in Benek's legal custody. *Purvis v. Hazelbaker*, 191 Ohio App. 3d 518, 2010-Ohio-6458, 946 N.E.2d 818, ¶ 51 ("a court may infer a detrimental effect on a child when a parent engages in such a pattern of withholding visitation as to demonstrate that the parent is clearly interfering in a child's relationship with her other parent or grandparents").

**{¶37}** During the divorce proceedings in 2013, the child witnessed Haviland abuse the mother. Haviland would also be present when the mother delivered the child to the father for visitation, a situation resulting in disorderly conduct charges and protection orders being issued against both the father and Haviland. Ultimately, Haviland was convicted of disorderly conduct.

**{¶38}** The situation was purportedly resolved in September 2014, by an Agreed Judgment Entry providing the mother, "Julie M. Cain, shall not permit Steven W. Haviland to have any contact with the parties['] minor child * * * until further Order of the Court." Haviland continued to have contact with the child.

**{¶39}** In November 2014, the mother began to deny the father visitation with the

child after she claimed the child told her the father had touched her vagina. Although the mother claimed she denied the visitation on her attorney's advice, nothing was filed in court for the purposes of suspending or modifying the father's visitation.[1]

{¶40} The allegations were never substantiated. There are indications in the record that the child was "coached" into making the allegations. The allegations have had an undeniably detrimental effect on the father's relationship with the child.[2] The guardian ad litem reported that, if the allegations are untrue, the father "has been unfairly treated and deprived of crucial companionship time with [the child]."

{¶41} On March 27, 2015, the mother married Haviland and resided with him and the child.

{¶42} The majority states that the mother provided "an acceptable explanation for her actions, i.e., she testified that she was unaware of the specific language of the court order." *Supra* at ¶ 30. The mother's explanation is neither acceptable nor credible. The majority also emphasizes that the domestic relations court "conditioned its custody order upon the requirement that [the mother] continue to reside with her parents, the Becks." *Supra* at ¶ 31. Such a condition provides little guarantee of compliance with the court's order given the fact that the mother was living with the Becks and on two occasions left to live with Haviland, taking the child with her on both occasions. The Becks are either unable or unwilling to exert control over the mother.

{¶43} On April 15, 2015, the father and members of his family attended the child's soccer practice. Although Haviland was not initially present, the mother brought

---

1. On July 2, 2015, the domestic relations court issued a Judgment Order that the father, as well as the mother, should have supervised visitation with the child.
2. The father reported feeling uncomfortable when alone with the child, although the child has no such feelings toward the father.

him to the scene where the situation escalated resulting in disorderly conduct charges being filed against Haviland and the paternal grandfather.

**{¶44}** On April 29, 2015, Benek was awarded temporary custody of the child.

**{¶45}** In June 2015, Haviland committed further domestic violence against the mother. By the end of the year, the mother was living with her parents and intending to divorce Haviland when she could afford it.[3]

**{¶46}** The evidence in the record demonstrates the mother has disregarded the domestic relations court's orders, violated the father's visitation rights, and exploited unsubstantiated abuse allegations in order to compromise the child's relationship with her father and her father's family. Returning the child to the mother's custody does not ameliorate this situation. Having Benek retain custody would ameliorate the situation. *Compare In re Manweiler*, 11th Dist. Ashtabula No. 2003-A-0032, 2005-Ohio-2657, ¶ 33 ("appellant's baseless allegations are nothing more than an attempt to destroy the relationship between the minor child * * * and appellee, which is detrimental to the minor child" and, thus, "the trial court had competent, credible evidence to support its finding that appellant is unsuitable").

**{¶47}** Accordingly, I respectfully dissent and would reverse the decision of the domestic relations court.

---

3. Divorce proceedings were initiated in December 2015.