[Cite as *Cain v. Cain*, 2018-Ohio-3014.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| JULIE M. CAIN, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-P-0085** |
| JOHN A. CAIN, | : | |
| Defendant, | : | |
| LYNNE BENEK, et al., | : | |
| Third Party Intervenor-Appellant. | : | |

Appeal from the Portage County Court of Common Pleas, Domestic Relations Division, Case No. 2009 DR 000597.

Judgment: Affirmed.

*Michael A. Noble*, Lentz, Noble & Heavner, LLC, 228 West Main Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Lynne L. Benek*, pro se, 237 Sobul Avenue, Akron, OH 44305 (For Third Party Intervenor-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Lynne Benek, appeals the denial of her motion for custody of her minor grandchild, E.C. She asserts that appellee, Julie M. Cain, E.C.'s mother is not a suitable parent, and that it is in E.C.'s best interest for her to have custody. We affirm.

{¶2} Appellant is John A. Cain's mother. John and appellee were marred for approximately three years and had one child, E.C. Before the birth of their daughter, John and appellee separated because John was having mental problems and was prone to abusive behavior. In May 2011, a stipulated final divorce was entered naming appellee residential parent and legal custodian. John was granted visitation rights with supervision by appellant.

{¶3} Within two years of divorce, John and appellee became embroiled in a series of disagreements regarding John's visitation, his treatment of E.C., and the effect appellee's boyfriend was having upon E.C.'s welfare. At some point, E.C. accused John of engaging in sexual behavior with her. Thus, appellee unilaterally stopped John's visitation. An investigation was conducted, but no independent evidence was found corroborating E.C.'s accusation. Appellee did not move to terminate visitation and after John filed a contempt motion, supervised visitation continued.

{¶4} Although appellee initially lived with her parents following the divorce, she and E.C. later resided with her boyfriend. At some point, appellee and her boyfriend had a physical altercation resulting in a domestic violence charge against him. Because the altercation occurred in E.C.'s presence, John moved for a change of custody. The motion became moot when appellee agreed to not allow any further contact between E.C. and the boyfriend.

{¶5} Approximately six months later, appellee violated the agreement when she posted photographs on social media showing E.C. with her and her boyfriend. A short time after that, appellee married her boyfriend and took E.C. to again live with him. This led appellant, E.C.'s paternal grandmother, to move for emergency temporary legal

2

custody, asserting that it was unsafe for E.C. to cohabitate with appellee's new husband. Following an evidentiary hearing, appellant's motion was granted and the child lived with appellant for nine months.

{¶6} As temporary legal custodian, appellant moved to intervene in the divorce proceeding. After that motion was also granted, she moved for permanent custody, maintaining that appellee was consistently denying John visitation by asserting false accusations. Before a separate hearing was held, appellee moved to her parents' home because of a second domestic violence altercation with her then husband. Accordingly, at the outset of the next hearing, she orally moved for custody on the grounds that, since she planned to bring a separate divorce action against her husband, E.C. would no longer have contact with him.

{¶7} Finding that appellant did not prove appellee to be unfit, the trial court overruled her motion for permanent custody and ordered legal custody of E.C. to appellee, so long as appellee continues to reside with her parents. As to John, the court reaffirmed supervised visitation. Appellant appealed this decision. We affirmed. *Cain v. Cain*, 11th Dist. Portage No. 2016-P-0011, 2017-Ohio-708.

{¶8} In April 2017, appellant again moved for permanent custody alleging appellee to be unfit because she refused to show any respect for visitation rights. In support, appellant referred to a new confrontation between the two families, but otherwise she relied primarily upon events that the court had already considered in deciding prior motions.

{¶9} Before appellant's motion was heard, John submitted two motions. First, he moved for contempt on the grounds that appellee was refusing to comply with the trial

3

court's order relating to summer visitation. Second, he moved for a change of custody, arguing that a change of circumstances occurred due to appellee's consistent refusal to honor his visitation rights. As alternative relief under the second motion, John requested unsupervised visitation.

{¶10} An evidentiary hearing on all pending motions was held September 5, 2017, during which the trial court heard testimony from John, appellee, and appellant. As to John's contempt motion, the trial court overruled it on the basis that, even though appellee had "technically" failed to follow certain visitation orders, her conduct was not willful or wanton. As to the two motions for change of custody, the court denied both on the basis that neither John nor appellant proved a change in circumstances. However, John's alternative request that future visitation with E.C. be unsupervised was granted. In addition, the court dismissed appellant as a party to the divorce case.

{¶11} In bringing this second appeal, appellant assigns the following as error:

{¶12} "[1.] The trial court committed error in removing Lynne Benek as a third party intervener in the case.

{¶13} "[2.] The trial court committed error when not making a change in the custodian of E.C."

{¶14} Appellant's second assignment will be addressed first. In arguing that she should be granted legal custody of E.C. because appellee is unfit, appellant asserts that appellee is constantly engaging in behavior that harms John's relationship with E.C. According to her, appellee would not allow John to see E.C. as often as mandated under the trial court's visitation orders.

{¶15} As this court noted in appellant's first appeal, the standard for determining

4

motions to modify custody between the two parents does not apply when the individual seeking custody is not a parent:

{¶16} "When a non-parent seeks to replace a parent as the legal custodian of a minor child, the parent's fundamental right to raise her own child is invoked. *Baker v. Baker*, 113 Ohio App.3d 805, 810, 682 N.E.2d 661 (9th Dist.1996), quoting *In re Perales*, 52 Ohio St.2d 89, 96, 369 N.E.2d 1047 (1977). As a result, a higher standard must be satisfied before the non-parent can prevail; i.e., the parent must retain custody unless she is found to be unsuitable. *Ives v. Ives*, 9th Dist. Lorain No. 02CA008176, 2003-Ohio-3505, ¶13. 'Suitability or lack thereof, essentially measures the harmful effect of the custody on a child.' *Id*." *Cain*, 2017-Ohio-708, at ¶32.

{¶17} In support of her contention that appellee refused to follow visitation orders, appellant notes that she and John testified as to two specific instances. First, they both stated that appellee would not allow John to see E.C. one extra day each week under a September 2016 visitation order. Second, John testified that, after the trial court ordered standard visitation, appellee refused to give him four weeks of summer visitation.

{¶18} As to the extra day visitation, appellee testified that John did not contact her and tell her which day he wanted as the extra day. As to the summer visitation, she testified that after she and her attorney made an offer concerning when John could have E.C. during the summer, he did not respond. Thus, visitation was not due to nefarious acts on her part, but primarily due to John's failure to communicate.

{¶19} In relation to the extra day of visitation, appellant testified that she sent a text to appellee on John's behalf, specifically asking what day of the week John could have E.C. and that appellee did not respond. Appellee denied receiving the text, and

5

appellant failed to produce evidence verifying that it was sent.

{¶20} As a separate point regarding appellee's compliance with visitation, appellant has attached to her appellate brief an affidavit in which she avers as to appellee's refusal to cooperate with visitation. But, that affidavit was not before the trial court when it rendered its decision and it cannot be considered on appeal. S*tate v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus.

{¶21} Most of appellant's testimony focused upon a soccer game where appellee or her father told E.C. not to hug appellant or show her affection. This, however, even when considered in the context of appellee's other conduct, does not show appellee to be unfit. Therefore, as the trial court did not err in denying appellant's motion to modify custody, her second assignment lacks merit.

{¶22} Turning back to appellant's first assignment, she asserts that her dismissal from the case as a third-party intervenor was unjustified when her presence could still be beneficial to E.C. However, with custody decided in appellee's favor and John having unsupervised visitation, appellant continuing as a party would serve no purpose. Appellant's first assignment also lacks merit.

{¶23} The judgment of the Portage County Court of Common Pleas, Domestic Relation's Division, is affirmed.


TIMOTHY P. CANNON, J., concurs,

DIANE V. GRENDELL, J., concurs in judgment only.

6